FRANK VAN CLEVE AND THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON, PLAINTIFFS IN ERROR, v. THE PASSAIC VALLEY SEWERAGE COMMISSIONERS, DEFENDANT IN ERROR.

Argued December 1, 1904—Decided March 6, 1905.

1.  The act of April 22d, 1903 (*Pamph. L., p.* 777), which provides a legislative scheme for the relief of the Passaic Valley Sewerage District from pollution, by requiring all the sewage of the said district to be discharged into New York bay through a system of main, trunk and outlet sewers, to be constructed and maintained by a commission of executive appointment, is a local law for the prosecution of a public work under direct legislative sanction.    It is not a law "regulating the internal affairs of towns or counties or appointing local officers or commissions to regulate municipal affairs" (Constitution, article 4, section 7, page 11).    Its effect is not to regulate such affairs, but to repeal all antecedent legislation inconsistent with its provisions.

2. The provision of this act that authorizes the levying of a tax upon all persons and property within an area not coterminous with the Passaic Valley Sewerage District, for an amount depending solely upon the judgment or discretion of the commission appointed under the provisions of the act, renders the act unconstitutional. (*a*) because it is an attempt to delegate an essential element of the power of taxation; (*b*) because, if the taxing power could be deemed to be granted to the commission as the representative of the sewerage district, the latter is not a political district of the state, not being invested with any function of local government; (*c*) because, if the Passaic Valley Sewerage District were a political district of the state, it could not be invested with the power to tax persons and property beyond its own limits.

3. The legislature of New Jersey, in which the governmental power of taxation resides, does not possess the power to delegate to another body having no governmental function the authority to determine in its judgment or discretion the amount to be raised by taxation.

4. A grant of the power of local taxation, to be valid, must conform to the fundamental doctrine that the area over which such power extends shall be coincident with a political district of the state exercising some power of local government over the area selected for taxation.

5. A grant of the right to determine the amount of tax to be levied upon a given area, being a grant of an essential element of the power of taxation, must conform to the same fundamental doctrine.

6. *Quære.* Whether, if powers adequate to the execution of the legislative scheme of drainage were conferred by the legislature upon the area to be taxed, erected into a political district, compulsory duties respecting the exercise of such power could be constitutionally imposed upon such political district?

---

On error to the Supreme Court.

The writ of *certiorari* in this case brought up two resolutions passed by the Passaic Valley Sewerage Commissioners on the 7th day of July, A. D. 1903, one estimating the cost and expense of the whole work to be undertaken, provided and constructed by the said commissioners under and by authority of the law of this state, at the sum of $9,000,000, and another resolution by which the said commissioners provided for an issue of its corporate bonds to the amount of $1,000,000, in order to provide money for the payment of the costs and expenses to be incurred by said board for the purchase of lands, rights

or interests in lands, and the construction of disposal works, power stations, sewers, drains and other works, and the expenses connected therewith, including interest during the construction, and directing that said bonds be sold at par and that notice calling for bids be published and presented at the office of said commissioners on the 18th day of August, A. D. 1903.

The reasons filed in the Supreme Court raise constitutional questions affecting the validity of an act of the legislature, approved April 22d, 1903. *Pamph. L., p. 777.* The judgment of the Supreme Court dismissed the writ upon grounds that are stated in the opinion delivered by Mr. Justice Pitney (*ante p.* 183).

For the plaintiffs in error, *William B. Gourley, Thomas C. Simonton, John W. Griggs* and *Vivian M. Lewis.*

For the defendant in error, *Joseph Coult, Chandler W. Riker* and *Richard V. Lindabury.*

The opinion of the court was delivered by

GARRISON, J.   The title of the statute under review is, "An act to relieve from pollution the rivers and streams within the Passaic valley sewerage district, established and defined by an act of the legislature, entitled 'An act to create a sewerage district to be called the Passaic valley sewerage district,' approved March twenty-seventh, one thousand nine hundred and two, and for this purpose establishing therefor a district board of commissioners, defining its powers and duties, and providing for the appointment, terms of office, duties and compensation of such commissioners, and further providing for the raising, collecting and expenditure of the necessary moneys." The provisions of this act are set forth at length in the opinion delivered by Mr. Justice Pitney, in the Supreme Court.

Amidst a mass of details, three features of this legislation stand out prominently, namely, (1) what the legislature proposed to accomplish; (2) how it proposed to accomplish

it, and (3) how it proposed to pay for it. As succinctly stated in the title of the act, these three purposes are—*first,* to relieve from pollution the rivers and streams within the Passaic Valley Sewerage District; *second,* to establish and empower a board of five commissioners for this purpose; *third,* to raise the necessary moneys, which, by reference to the body of the act, is to be by a general tax imposed upon a circumscribed area.

The validity of this statute in each of these respects is challenged by the prosecutors upon constitutional grounds.

For the accomplishment of the first of these objects, which is the upshot of the entire scheme, the legislature has put forward its police power to the extent of requiring that all the sewage of a designated locality, which had previously been erected into a sewerage district, should be discharged into New York bay through a system of main, trunk and outlet sewers and their appurtenances. The prosecutors deny *in limine* the right of the legislature to engage directly in such an undertaking, upon the ground that the disposal of its sewage is an internal affair of each of the towns included in the legislative scheme, and hence cannot be regulated *ab extra* by force of a law that is necessarily local. If the statute under review concerned itself with the internal sewerage of each or of any of the municipalities involved, prescribing rules for its collection and transmission, and substituting an alien commission to carry its requirements into effect, a different question would be presented. The statute, however, is not aimed at or addressed to the sewerage problem as it exists within any municipality. On the contrary, it takes up that problem at the precise point where the municipality normally, if not necessarily, lays it down. So that the only requirement to be found in the act that savors substantially of internal regulation is that which provides that sewers that do or may discharge into streams shall be connectible and connected with the external sewerage system established by the act. It is claimed that this requirement, as well as certain provisions for the temporary disturbance of highways and for their re-location with municipal consent, constitute regulations of

the internal affairs of towns of the sort that the legislature is forbidden to enact by local laws. Obviously the act is local, as from its nature it must be, but it is equally obvious that the purpose of the act is a public enterprise, as distinct from a municipal affair, and that the regulations referred to are purely incidental to such extra-municipal scheme. It is not, moreover, true that every public utility that exists in whole or in part within the geographical boundaries of a municipality is its internal affair in the same sense that every governmental function that has been committed to it is one of its internal affairs. So that it may well be and often is the case that the special license of municipalities to regulate instruments of public utility within their confines may co-exist with the general legislative power to direct the larger scheme of which such instruments are a part. In such case, to direct is to repeal if the authority that rests in prior delegation be inconsistent with the later expression of the superior will. Even governmental functions may, by implication, be thus repealed, *a fortiori* may those that are geographical rather than governmental. Assuming such repealer to be necessary, that requirement is met by the statute under review, so far as its main purpose is concerned. To relieve a river from pollution, to construct and maintain for this purpose sewers running to the seaboard, or to other point of output, and to carry away in such sewers all that would otherwise pollute such river, is clearly within the power of the central legislative body; and inasmuch as such scheme would be futile if each municipality may set up an authority previously delegated to it in opposition to such legislative purpose, by refusing to connect its internal sewerage system with that of the larger scheme, it follows by necessary implication, that so much of such delegated authority as could be used to this end is withdrawn by the very act of requiring that such connections be made. It is the familiar case of repeal by necessary implication. To hold otherwise is to decide that the constitution has unwittingly placed the agent above the principal, the delegated authority of the smallest borough above the legislative repository of the sovereignty of the state. Moreover,

the act in question, in its twenty-fourth section, contains an express repealer of all acts and parts of acts inconsistent with its provisions. I have, therefore, no hesitation in concluding that the legislature may directly engage in the main purpose of this act without unconstitutional infringement of the authority vested in any of the municipalities involved.

The second inquiry is that touching the manner in which it is proposed that this purpose be accomplished, namely, by a commission to be appointed by the governor of the state. The objection urged against the employment by the legislature of this instrumentality for effectuating its will, is that it is in contravention of that clause of the constitution (article 4, section 7, subdivision 11) that prohibits the legislature from passing local or special laws appointing commissions to regulate municipal affairs. The commissioners appointed under this legislation, though incorporated, are not constituted a municipal body, and, as has already been said, the work committed to them is of a public, as distinguished from a municipal, character. Observing this distinction, which I take to be what the framers of the constitution had in mind, I find in this objection no overstepping by the legislature of any constitutional barrier.

Thus far the conclusions reached are in practical accord with those upon which the judgment of the Supreme Court was based, and result in sustaining the power of the legislature to engage directly in the undertaking of the purification of the Passaic Valley Sewerage District, including its right to put forth directly for this purpose its police powers, and to exercise such powers through a board of commissioners selected and appointed in the manner provided by this act.

The remaining inquiry concerns the provisions of the act for raising the money to be expended by such commissioners in the course of such undertaking.

Shortly stated, the fiscal scheme of the act is that the expense incident to construction, which shall not exceed $9,000,000, is to be paid out of the proceeds of the sale of bonds, the principal of which through the medium of a sinking fund, the interest currently accruing thereon, and all other

indebtedness incident to construction "shall be," in the language of the act, "a charge upon all persons and property in the municipalities or taxing districts lying in whole or in part within said sewerage district." For the objects thus mentioned the commission is empowered each year to determine the amount of money to be raised and to apportion the same among the respective taxing districts comprised in the above-described taxation area, in the ratio that the ratables of each taxing district within such sewerage district bear to the total ratables of the entire sewerage district. The amount so apportioned is to be each year assessed upon all persons and property within the taxation area, as other general taxes are, and to be in like manner collected. The amount required for annual maintenance shall be assessed and collected in the same manner, except that the ratio of assessment is based upon the amount of sewage discharged into the sewers of the sewerage district by each municipality or taxing district.

The significant features of this taxing scheme are—*first,* that the amount to be raised is committed solely to the commissioners, within the limit of $9,000,000, in the matter of construction, and without any limit in the matter of maintenance; *second,* that the tax is laid upon a taxation area that is not coterminous with the sewerage district established by the legislature; and *third,* that neither the taxation area nor the sewerage district is a political division of the state, or invested with any governmental function.

If the first of these features of the act is a grant to the commissioners of "the authority to determine in its judgment or discretion the amount to be raised by taxation," the act is unconstitutional under the decision of this court in the case of *Township of Bernards* v. *Allen, 32 Vroom 228.*

In that case commissioners appointed by the governor under legislative sanction had, in pursuance of the authority conferred upon them by their appointment, determined the amount of taxes to be raised and assessed in a township for township purposes at a sum that did not exceed one and one-fourth per cent. on the ratables, which was the limit imposed by the legislature, beyond which the commissioners could

not go. The case was argued and decided in the Supreme Court, and was argued upon error in this court, as one of statutory construction, without reference to the question whether the statute itself was not an unconstitutional grant of the taxing power. At the ensuing term this court, of its own motion, directed the case to be reargued upon this constitutional point, which was done. The reported decision, therefore, is the considerate determination of this court upon that precise question. The act was held to be unconstitutional for the reason stated, upon the ground that the authority given to the commissioners to determine the amount to be raised by taxation was in effect a grant of the power to tax that was controlled by the fundamental principles touching that subject.

The reasoning of the opinion delivered by Mr. Justice Depue was this: Every system of taxation consists of two parts—the elements that enter into the imposition of the tax and the steps taken for its assessment and collection. The former is a legislative function, conserved by constitutional prescriptions; the other is mere machinery. The latter may be delegated to other than governmental agencies; not so the former. Matters of computation, appraisement, adjustment and such like, involving mere certainty of detail, follow the delegable power, in illustration of which the learned justice instanced the taxation of railroads and canals, the equalization of taxes and the reassessment of benefits for improvements; but no element that enters essentially into the tax itself may be so delegated (citing *State* v. *Sickles,* 4 *Zab.* 125; *State* v. *Koster,* 9 *Vroom* 308, and *Munday* v. *Rahway,* 14 *Id.* 339), and concluding with this statement of the result reached: "These decisions are precedents in our own courts, affirming the want of power in the legislative body in which the power of taxation is vested to delegate the authority to others to determine in its judgment or discretion the amount to be raised by taxation."

That the case then before this court was identical in principle with the present case, and not distinguishable upon its facts, must be apparent. The body to which the authority is

delegated, namely, an executive commission, is the same; the delegation of the power to determine, in its judgment or discretion, the amount to be raised by taxation, is the same; the imposition of a limit beyond which the commission could not go is the same, the only difference being that in that case it was one and one-fourth per cent. of the ratables, and in this the limit is $9,000,000 for construction and no limit for maintenance. In these controlling particulars, therefore, the one act is, in effect, the repetition of the other. If it be urged that the determination of the amount of tax to be levied is the only element of the taxing power that is granted to the commissioners in the present case, whereas that feature, with others, existed in the decided case, the answer is that such feature was precisely the one singled out in the earlier case for exegesis and decision, and that a single overstepping of a constitutional prescription is, in its effect upon legislation, as fatal as a multiplication of like transgressions. That the amount to be raised by taxation is to be based upon the expense incurred by the commission in construction and maintenance, does not render the determination of the amount of taxation any less a matter that is committed to the judgment and discretion of the commissioners, since the amount of such expense rests wholly with the commission up to the limit of $9,000,000, which, as has been shown, does not distinguish this case from the case cited, and in the matter of maintenance no limit whatsoever is imposed upon the judgment or discretion of the commissioners. Moreover, any indebtedness incurred in either of these ways is expressly charged upon all persons and property within the taxation area, and, under such circumstances, the grant of a discretionary power to incur indebtedness is a grant of a discretionary power to tax. The query of the court below, whether the doctrine of Bernards Township v. Allen would be applied to a taxing district established for purposes not municipal in character, can have but one answer; for, if the delegation be held to be illicit when the money raised by taxation is to be returned to the municipality from which it was exacted, a fortiori, it will be so held when such tax is to be diverted

to extra-municipal purposes. Moreover, the decision of Bernards Township *v.* Allen turned upon the delegation of legislative power, and not upon the derogation from municipal authority.

Upon the authority of the case cited, this court is unequivocally committed to the doctrine that the legislature of this state, in which the governmental power of taxation resides, does not possess the power to delegate to another body, having no governmental functions, the authority to determine, in its judgment or discretion, the amount to be raised by taxation, to which obviously must be added that such authority is in effect so delegated if such body may be empowered to levy taxes to the amount of an indebtedness to be incurred by it in its judgment or discretion.

Upon the authority of Township of Bernards *v.* Allen, this provision of the statute under review renders the act invalid.

The two other significant features of the act are—*first,* that it authorizes the imposition of a tax for the purification of a sewerage district established by the legislature upon an area that is greater in extent than such district; and *second,* that neither such taxation area nor such sewerage district are political divisions of this state. These features of the act may be conveniently considered together.

The decisions of this state establish two propositions touching the delegation of the power of general taxation—*first,* that the legislature can delegate the taxing power only to political districts of the state, to be exercised within their respective limits; and *second,* that some power of local self-government is essential to every political district. *Tidewater Company* v. *Coster,* 3 *C. E. Gr.* 518; *State, Agens, pros.,* v. *Newark,* 8 *Vroom* 415; *State, Baldwin, pros.,* v. *Fuller,* 10 *Id.* 576; *Lydecker* v. *Englewood,* 12 *Id.* 154; *Morgan* v. *Comptroller of Elizabeth,* 15 *Id.* 571; *Kean* v. *Driggs Drainage Co.,* 16 *Id.* 91; *Auryansen* v. *Hackensack Improvement Commission, Id.* 113; *Taylor* v. *Smith,* 21 *Id.* 101; *Peck* v. *Raritan,* 23 *Id.* 319; *Carter* v. *Wade,* 30 *Id.* 119; *Smith* v. *Howell,* 31 *Id.* 384.

The cases cited sustain each of the above propositions. The language of their decisions is unequivocal. "Nothing has been better settled in this state," said Mr. Justice Magie, in Taylor *v.* Smith, "than that the legislature has no authority to delegate the power of general taxation over persons or property except to political divisions or corporations of the state, and that for the sole purpose of enabling them to exercise the powers of government conferred upon them within their locality."

"It must be regarded as settled in this state," is the language of Mr. Justice Dixon, in Lydecker *v.* Englewood, "that the legislature has no power to impose a tax upon any territory narrower in bounds than the political district of which it is a part."

"I think the true rule deducible from sound reason," said Mr. Justice Van Syckel, in the opinion adopted by this court in Baldwin *v.* Fuller, "is that legitimate taxation is limited to the imposing of burdens like those in question, as far as they are for the public benefit, upon the persons or property within the political district possessing powers of local government, so that the exactions are distributed over the entire territory upon the rule of uniformity."

The circumstance that these decisions were pronounced in cases where the taxation area was in fact narrower in extent than the political district has no controlling significance, in view of the principle that underlies the ground of decision. That principle, which is, in effect, a paraphrase of the maxim that taxation and representation go together, requires that the district to be taxed shall be coterminous with a district to which some right of local self-government is given, and hence is, from its nature, equally applicable to a case in which the grant of governmental power does not extend over the whole of the area covered by the delegated power of taxation. In every such case, so much of the area of taxation as lies outside the political district would inevitably present the reprobated situation, in that it would be taxed by an agency with which it had no political relationship.

Deeming this principle to be firmly embedded in our jurisprudence, its application to the case before us rests in no uncertainty. The area selected for taxation is not a political district of the state. The sewerage district is not such a district, and, if it were, the area over which the power of taxation is extended by the act is not coincident with it. The act therefore runs counter, in both particulars, to the fundamental doctrine of taxation established by our courts. It is therefore invalid.

Having stated the considerations that lead me to the conclusion that the act before us is invalid because of its fiscal provision, I shall, to avoid misapprehension, add that nothing in this opinion is intended to imply a lack of power in the legislature to effectuate the object expressed in this act by means that are in harmony with the fundamental principles of taxation, illustrated by the decisions I have cited. If, for instance, as was suggested by the arguments before us, powers adequate to the execution of the legislative scheme of drainage were conferred upon the entire area to be taxed, and duties respecting the exercise of such powers constitutionally imposed in such manner as indicated that their exercise was compulsory, a question not touched upon in this opinion would be presented.

Inasmuch, however, as that question is not before us for decision, it is not before us for discussion.

My conclusion is that the judgment of the Supreme Court should be reversed, and that the resolutions of the board of commissioners should be set aside.

*For affirmance*—GRAY.  1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, SWAYZE, BOGERT, VREDENBURGH, VOORHEES, VROOM, GREEN.  10.