TOWNSHIP OF MIDLAND IN THE COUNTY OF BERGEN v. BOROUGH OF MAYWOOD AND THE TOWNSHIP OF NEW BARBADOES.

Argued February 17, 1910—Decided June 13, 1910.

A statute which empowers the Court of Common Pleas, upon the initiative of ten citizens, who are not required to be taxpayers or residents of the municipalities concerned, to appoint commissioners to determine the bounds of a drainage district, the extent of the work to be done, and the cost to be incurred, independent of any control by the voters, and requires the municipalities to pay the cost as ascertained by the commissioners, is a delegation of the power of taxation unconstitutional under the rule of *Van Cleve* v. *Passaic Valley Sewerage Commissioners,* 42 *Vroom* 574.

On *certiorari.*

Before Justices GARRISON, SWAYZE and PARKER.

For the prosecutor, *Gilbert Collins.*

For the defendant, *Wendell J. Wright.*

The opinion of the court was delivered by

SWAYZE, J. In 1903 proceedings were taken under the act of that year (*Pamph. L.* 1903, *p.* 131) for the drainage of land lying in the township of New Barbadoes, the borough of Maywood and the township of Midland. After the completion of the work an assessment was made under the act as amended by chapter 168 of the laws of 1908. *Pamph. L., p.* 278. In accordance with that amended act, after assessing the benefits the commissioners assessed the township of Midland in proportion to the taxable ratables in the township, instead of in proportion to the amount of land specially benefited by the improvement lying in each municipality, as provided by the original act of 1903. Out of one hundred and thirty-five different parcels assessed for benefits, three only lie in the township of Midland, and the amount assessed

against them for benefits is only $163 out of a total cost of $28,202.12. The general assessment upon the township of Midland is $2,513.64 out of a total assessed upon the three municipalities at large of $23,713.77. It is argued that the act of 1908 is not applicable, because it is retroactive, and to hold it applicable in a case like the present would result in imposing upon the township of Midland a much greater burden than would be imposed upon it under the original act. The limitation of the amount to be paid by the township of Midland is supposed to be a vested right, which, under the act relative to statutes (*Gen. Stat., p.* 3194), would not be affected by the general repealer contained in the act of 1908. This argument would be forcible as applied to the right of an individual, but the legislative control of municipalities is much greater, and the doctrine of vested rights is not so applicable. In *O'Neill* v. *Hoboken,* 43 *Vroom* 67, it was held that the plaintiff might maintain a suit against the city of Hoboken upon improvement certificates issued by commissioners for the expense of a drainage scheme, although the debt was barred by the statute of limitations at the time of the passage of the act of 1903 (*Pamph. L., p.* 514) which made the municipality liable notwithstanding the time when the same may have become due. The effect was to deprive the municipality of the defence of the statute of limitations, which had existed at the time the act of 1903 was passed. That case is also authority for holding that municipalities may be made responsible for the cost of drainage where the district to be drained comprises only a part of each municipality.

It is true that the act of 1908 ought not to be held retrospective unless such a construction is necessary, but since the act provides a scheme of raising the money to pay the cost of the improvement which is altogether at variance with the scheme provided by the original act of 1903, and since it repeals all inconsistent acts, we must either hold that the scheme provided by the act of 1908 is applicable in the present case, or that there is no method by which the cost of the improvement can be paid. The legislature by the act of 1903

had empowered the commissioners to incur indebtedness, and it can hardly be thought it intended in 1908 to take away the means of paying that indebtedness. It is perhaps too much to say that our construction makes the act of 1908 retrospective. It, however, substitutes a different scheme for raising the money where no proceedings for that purpose have already been begun.

This result makes it necessary for us to determine whether the scheme provided by the act of 1908 is constitutional. The original act of 1903 puts the power of initiative in any ten citizens who deem the drainage necessary for the public health. They need not be owners of any portion of the land to be drained, nor freeholders, nor even residents of the municipalities to be affected. Upon their petition commissioners are appointed by the Court of Common Pleas, who, after an inspection of the premises, if they determine that the drainage is for the benefit of the public health, cause a survey to be made of the lands to be affected thereby, and a map to be made, which certificate and map, with the determination of the commissioners, is filed in the office of the clerk of the court. Provision is made for an appeal to the court and for a summary hearing. What the effect of this hearing is to be the act does not indicate, for by section 6 it authorizes the commissioners to proceed to drain the lands affected after the expiration of the time limited for appeal, and there is nothing to indicate that an adverse decision by the court upon the appeal would deprive the commissioners of this power. They are authorized to borrow money and issue certificates of indebtedness, and by section 11, as amended in 1908, they are authorized, after the completion of the work, in order to provide for the payment of the costs, damages and expenses, to ascertain and determine the whole amount of such costs, damages and expenses, including a reasonable sum for the expense of making the assessment, and also including interest and discount upon the evidences of indebtedness, which interest is to be calculated to a date three months in advance. Thereupon the commissioners are directed to make a just and equitable assessment of the total

cost upon the lands specially benefited, but not in any case to exceed the amount of such special benefit; and in case the whole cost shall exceed the amount of benefits assessed upon the lands specially benefited, the excess is to be assessed upon and raised by general taxation in the municipalities in which the drained district lies, in the proportion that the taxable ratables of each municipality bear to the taxable ratables of all the municipalities affected. Their report is to be presented to and confirmed by the court, and after confirmation a certified copy of it is required to be delivered to the clerk of the governing body of each municipality in which any of the lands assessed lie, or upon which any portion of the cost of the improvement may fall, and the governing body is within sixty days to pay to the commissioners the amount assessed against the municipality and the amount assessed against any lands lying in the municipality. The governing body of each municipality is required, upon receiving a copy of the assessment, to raise the necessary funds to pay the amount assessed against the municipality and also the amount assessed against the lands lying in the municipality, and to pay the same to the commissioners. The plain effect of this act is to empower three commissioners, appointed by the Court of Common Pleas, to impose a tax upon the municipalities without the assent of any of the taxpayers or voters, or of the governing body, and the power of initiating the proceeding rests with any ten citizens who may be resident in a remote portion of the state, and who need not have any interest, aside from that of the general public, in the proposed improvement, and need not be liable to contribute in any way to its cost. The commissioners thus appointed determine the bounds of the district, the extent of the work to be done, the cost to be incurred, the interest to be paid upon securities, and the amount to be raised, independent of any control by the voters of the municipalities, and the municipalities and the taxpayers have no option but to pay such bills as the commissioners have incurred.

Such a scheme is condemned by the decision of the Court of Errors and Appeals in *Van Cleve* v. *Passaic Valley Sewer-*

*age Commissioners,* 42 *Vroom* 574. In that case Mr. Justice
Garrison, speaking for the court, said: "This court is un-
equivocally committed to the doctrine that the legislature of
this state, in which the governmental power of taxation re-
sides, does not possess the power to delegate to any other body
having no governmental functions, the authority to deter-
mine, in its judgment or discretion, the amount to be raised
by taxation, to which obviously must be added that such
authority is in effect so delegated if such body may be em-
powered to levy taxes to the amount of an indebtedness to be
incurred by it in its judgment or discretion." He adds:
"The decisions of this state establish two propositions touch-
ing the delegation of the power of taxation—*first,* that the
legislature can delegate the taxing power only to political
districts of the state, to be exercised within their respective
limits, and *second,* that some power of local self-government
is essential to every political district." The underlying prin-
ciple, he says, "which is in effect a paraphrase of the maxim
that taxation and representation go together, requires that
the district to be taxed shall be coterminous with a district
to which some right of local self-government is given, and
hence ·is, from its nature, equally applicable to a case in
which the grant of governmental power does not extend over
the whole of the area covered by the delegated power of taxa-
tion."

In this case, as in that, the drainage district is not con-
stituted a political district, and there is no power of local
self-government provided for by the act, while the power to
tax, instead of being coterminous with the district to be
drained, extends over the whole area of the municipalities in
which the land to be drained lies. And in this case, as in
that, the object of the drainage was the general advantage of
the public health. In this respect the case is to be distin-
guished from the meadow drainage cases to which we are
referred, where the initiative was in the landowners, the object
was the improvement of their lands, the proceedings were
within the control of a majority, and the expenses were to
be paid by the owners of land within the area. Even these

cases were recognized as anomalous, and rested by Chief Justice Beasley only upon the inveterate usage of the state, and the distinction, as we said in *Kean* v. *Driggs Drainage Co.*, 16 *Vroom* 91 (at *p.* 94), was clearly drawn between meadow drainage for the exclusive benefit of the owners, to be done at their sole expense, and drainage undertaken by the public, primarily as a matter of public concern, in which case the assessment upon landowners must be limited to the benefits imparted. One essential feature of this inveterate usage is that the parties who are to be charged with the expense of the improvement shall have the right of participating in the control of the undertaking. *Benjamin* v. *Bog & Fly Meadow Co.*, 39 *Vroom* 197 (at *p.* 199). The scheme provided by the act of 1908 is unconstitutional. The assessment is without warrant of law and must be set aside.