PASSAIC VALLEY SEWERAGE COM'RS v. UNITED STATES ex rel. HOLBROOK, CABOT & ROLLINS CORPORATION.

PASSAIC VALLEY SEWERAGE COM'RS et al. v. SAME.

(Circuit Court of Appeals, Third Circuit. March 5, 1926.)

Nos. 3452, 3453.

**1. Courts ⬥366(1).**

Construction of its own statute by state court is binding on federal courts.

**2. Municipal corporations ⬥282(3)—Municipalities contracting with sewerage commissioners held liable for ratable proportion of debt incurred by commissioners, and bound by judgment against commissioners (4 Comp. St. N. J. 1910, pp. 5831, 5834, 5836; Act N. J. April 1, 1903 [P. L. p. 158]; Act N. J. April 22, 1903 [P. L. p. 777]).**

Under 4 Comp. St. N. J. 1910, pp. 5831, 5834, 5836, Act N. J. April 1, 1903 (P. L. p. 158), and Act N. J. April 22, 1903 (P. L. p. 777), creating Passaic Valley sewerage district and commissioners, and empowering municipalities to contract with sewerage commissioners for construction and operation of sewers, municipalities voluntarily undertaking this work are principals, and are liable for their ratable portion of obligations incurred by sewerage commission in constructing such system, and bound by judgment taken against sewerage commission.

**3. Mandamus ⬥111.**

Legal liabilities of municipalites for debts incurred by sewerage commission as their agent after judgments against commissioners may be enforced by mandamus.

**4. Mandamus ⬥176—Funds paid to sewerage commission by municipalities for specific purpose should be excepted from mandamus enforcing judgment taken against commission.**

Funds paid to sewerage commission by municipalities within district for specific purpose should be excepted from mandamus enforcing payment of judgment taken against commission.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Mandamus proceedings by the United States, on the relation of the Holbrook, Cabot & Rollins Corporation against the Passaic Valley Sewerage Commissioners and against the Passaic Valley Sewerage Commission, the City of Newark, and others. Mandamus issued against respondents, and they separately bring error. Decree modified, and, as modified, affirmed.

See, also, 6 F.(2d) 721.

Frederic M. P. Pearse, of Newark, N. J., for plaintiffs in error Sewerage Com'rs.

Jerome T. Congleton and Jos. G. Wolber, both of Newark, N. J., and Randall B. Lewis, of Paterson, N. J., for plaintiffs in error municipalities.

John W. Griggs, of Paterson, N. J. (John W. Harding, of Paterson, N. J., and Thomas F. Conway, Joseph A. Kellogg and Thomas E. O'Brien, all of New York City, of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, on petition of Holbrook, Cabot & Rollins, who had recovered judgments against the Passaic Valley Sewerage Commissioners, a mandamus was granted ordering 20 municipalities to each pay to the said commissioners certain sums, which were ratably divided among the municipalities, which sums were to be used to pay off the said several judgments. Thereupon the municipalities took this appeal, and the error assigned is the grant of this mandamus, and the underlying question is whether the said municipalities are under any legal obligation to so contribute.

Some years ago it became apparent that the several municipalities which drained their sewage into the Passaic river must find some other outlet. Accordingly the state of New Jersey, by its act of 1902 (4 Compiled Statutes of New Jersey, p. 5831), enacted that certain named parts of the state were constituted a sewage district, and by its act of 1902 (4 Compiled Statutes, p. 5834) and by subsequent legislation (P. L. 1903, p. 158, and P. L. 1903, p. 777), certain commissioners were created. Without entering into detail we may say generally that this legislation empowered the commissioners to build sewers to provide for the entire district and authorized them to levy taxes to pay therefor. The whole matter was in the hands of the commissioners, and further than paying the required taxes the several municipalities had no voice whatever. The power of taxation under this legislation was considered by the Court of Errors and Appeals of that state in Van Cleve v. Passaic Valley Sewerage Commissioners, 60 A. 214, 71 N. J. Law, 574, 108 Am. St. Rep. 754. It was there held that the provisions of the act which authorized the levying of a tax by the commissioners was unconstitutional, adding: "It must be regarded as settled in this state," in the language of Mr. Justice Dixon, in Lydecker v. Englewood, 41 N. J. Law, 154, "that the Legislature has no power to impose a tax upon any territory narrower in bounds than the political district of which it is a part."

Evidently to avoid these constitutional objections, while still carrying out the highly desirable purpose of voiding the sewage of the entire District by a unified system, the law of 1907 (P. L. p. 22), being 4 New Jersey Compiled Statutes, p. 5836, was passed, which put the whole matter of approving and joining in the construction of a general sewage system in the option and power of each of the municipalities. The act empowered any such municipality joining in the plan, "by resolution of their governing bodies or boards having charge of their finances, to enter into a contract in writing with each other and with the Passaic Valley Sewerage Commissioners, in their corporate capacities, for the construction, maintenance and operation of said sewer or sewers."

Section 4. The section further provided: "The cost of the construction of said sewer or sewers, plant and works shall in said contract be apportioned to the respective municipalities entering into the contract in such proportion as the taxable property, real and personal, within so much of said municipality *so contracting* as is embraced in said sewerage district bears to the total amount of taxable property, real and personal, within so much of all the municipalities so contracting as is embraced within said sewerage district, as returned and certified by the respective taxing boards and taxing officers of the said municipalities for the year one thousand nine hundred and seven."

The section also provided: "And the several *contracting municipalities* and the Passaic Valley Sewerage Commissioners are hereby vested with absolute discretion in the determination of the size and capacity of such intercepting sewer or sewers, plant and works. Any contract made or entered into pursuant to the provisions of this act shall provide for the building, repairing, operating, maintaining and cleaning of any such intercepting sewer or sewers, plant and works, and for the purchase of the necessary lands, rights in land and other property by the Passaic Valley Sewerage Commissioners, and for the *payment of the cost and expense thereof* by the several contracting municipalities to the said commissioners."

And this provision: "Upon the making of such contract the Passaic Valley Sewerage Commissioners are further authorized and empowered to erect, *construct,* maintain and operate such intercepting sewer or sewers and appurtenances, together with all works, machinery, appliances and other things requisite or useful for the purposes to be accomplished by the same." Section 5.

The act by section 6, empowered the municipalities to procure all the needed funds to pay for the sewers as follows: "For the purpose of defraying the cost and expense of the construction of such intercepting sewer or sewers, plant and works, and appurtenances, and of making the payments which shall be designated and required to be made by such joint contract, the governing body or board in charge of the finances of each contracting municipality is hereby authorized and empowered to borrow the money necessary to make such payments upon the notes or other temporary obligations of such municipality, which notes or obligations may be renewed from time to time until permanent bonds shall have been issued by such municipality to take up and pay for the same."

The act by section 11 made the commissioners a body politic and corporate, "with power to sue and be sued," and "with all other power or authority proper or necessary to carry out and effectuate the purposes for which the said board is created."

This act of 1907 was considered in Berdan v. Passaic Valley Sewerage Commissioners, 88 A. 202, 82 N. J. Eq. 235, and it was there said: "The legislation of 1907 was enacted to meet the situation pointed out by that opinion [Van Cleve v. Passaic, supra], and, in my judgment, it remedied the evils of the earlier legislation." Construing the act, the court said: "Nowhere in the statute can there be found an intent to confer upon the sewerage commission discretion to choose the type, manner of building, or location of the sewer. This the act leaves finally to the contracting municipalities. The sewerage commission may suggest. Its duties are to prepare the prospectus, to be accepted, rejected or modified at the will of the municipalities, and upon adoption and contract made, its powers are restricted to the construction of the sewer according to the terms of the contract, to be exercised in the manner prescribed by the statute. The sewerage commission is merely an instrumentality, afforded by the Legislature, by which the municipalities are enabled to carry out the project outlined, and in a measure defined by the statute."

[1] This construction of its own statute by the Court of Chancery is binding upon the federal courts sitting in that state, and we are therefore justified in holding that the several municipalities here before us when

they, by resolution and contract, exercised, as they did, the statutory power "to enter into a contract in writing *with each other* and with the Passaic Valley Sewerage Commissioners, *in their corporate capacities,* for the construction * * * of said * * * sewers," etc., exercised the powers and incurred the obligations incident to principalship on their part, and the employment of the sewerage commission as their agent, or, to use the words of the court above quoted, "The Sewerage Commission is merely an instrumentality, afforded by the Legislature, by which the municipalities are enabled to carry out the project outlined, and in a measure defined by the statute."

[2] Now to carry out the joint project of these municipalities, when they elected to so do, the statute constituted their agent a body corporate, conferred power on it to contract and build, and subjected it to suit. In pursuance of those powers, it has built the sewer system which each of these municipalities is now using; it has incurred debts and obligations to third parties, for which it has been sued and judgments recovered. Their agent has no assets, no one ever expected it could or would pay for the improvements or use them, and now its principal, the municipalities, contend they are under no obligation to pay these construction costs. To us it is clear that the municipalities, by voluntarily undertaking this work, by the terms of the statute and by the construction placed upon it by the Court of Chancery, are the principals, and on them rests the legal and statutory liability to contribute their ratable proportion toward the payment of the obligations incurred by their agent. When such agent was sued, they did not see fit to intervene or defend. If not actual parties, they were privies and bound by the judgment. But, even if such were not the case, they had the opportunity, when called before the court below, to show any defense they had in fact or law to the claims of the contractors.

[3] Holding, as we do, that the commission was the agent of the municipalities, and that the legal obligation rests on them to pay the cost of their constructions, we hold the court below was justified in enforcing this legal liability by the process of mandamus, and we accordingly dismiss the appeal of the municipalities.

[4] We note, however, that in so far as funds are concerned which have been paid, or shall be paid, to the commission by the several municipalities for any specific purpose, such as the upkeep, maintenance, operation, and the like of the sewage system, such funds should be excepted from the mandamus.

As thus modified, the decree below will be affirmed.