BOARD OF TENEMENT HOUSE SUPERVISION OF THE STATE OF NEW JERSEY, PROSECUTOR, v. HARRY MITTLEMAN, RESPONDENT.

BOARD OF TENEMENT HOUSE SUPERVISION OF THE STATE OF NEW JERSEY, PROSECUTOR, v. HARRY MITTLEMAN, RESPONDENT.

Submitted January 27, 1928—Decided May 2, 1928.

Before Justices TRENCHARD, KATZENBACH and KALISCH.

For the prosecutor, *Edward L. Katzenbach,* attorney-general, and *Grover C. Richman.*

For the respondent, *Louis M. Mallin.*

The opinion of the court was delivered by

KATZENBACH, J. The above cases are presented on writs of *certiorari.* They involve the same question. One suit was instituted to recover a penalty against Harry Mittleman as the owner of premises 230 South Vermont avenue, and the other suit was to recover a penalty against the same defendant as the owner of premises 238 South Vermont avenue,

Atlantic City. The board of tenement house supervision of the State of New Jersey was the plaintiff in both cases and is the prosecutor of the writs. Both of said premises are three-story brick houses arranged for and occupied by three families living independently of each other and doing their cooking upon the premises. Each house was occupied without there having first been issued a certificate of occupancy by the board of tenement house supervision. The two suits were instituted in the District Court of the city of Atlantic City.

The complaints charged the defendant with violating the provisions of section 183 of the act entitled "An act to improve the condition of tenement houses in this state and to establish a state board of tenement house supervision." 4 *Comp. Stat., p.* 5350. Section 183 reads as follows:

"No building hereafter constructed as, or altered into a tenement house shall be occupied in whole or in part for human habitation until the issuance of a certificate by the said board that said building conforms in all respects to the requirements of this act; each certificate shall be issued within ten days after written application therefor, if said building, at the date of such application, shall be entitled thereto."

The legislature, in the original Tenement House act, defined a tenement house. 4 *Comp. Stat., p.* 5323. This definition was amended by chapter 10 of the laws of 1918 (*Pamph. L.* 1918, *p.* 68), and later amended by chapter 337 of the laws of 1927. *Pamph. L.* 1927, *p.* 789. It now reads as follows:

"A tenement house is any house or building, or portion thereof, which is rented, leased, let or hired out to be occupied or is occupied as the home or residence of three families or more living independently of each other and doing their cooking upon the premises; provided, that in cities bordering on the Atlantic ocean, a tenement house is any house or building, or portion thereof, which is rented, leased, let or hired out to be occupied or is occupied as the home or residence of more than three families living independently of each other and doing their cooking upon the premises."

The District Court of the city of Atlantic City found the defendant not guilty of a violation of the Tenement House act. The decision of the District Court was based upon the amendment of 1927, in that the premises in question, being occupied by only three families, came within the provision of the act of 1927.

Under the amendment of 1927 there are two classes of tenement houses—those in cities bordering on the Atlantic ocean are in one class, and those in cities elsewhere in the state are in the other class; the former requiring the house or building to be occupied by more than three families, and the latter requiring the house or building to be occupied by three families or more. The single question, therefore, raised by the writs of *certiorari* is whether the act of 1927 is constitutional.

The Tenement House act is general. Its enactment is an exercise of the police power of the state. The object and purpose of the act is to protect the life and health of the citizens of this state from the hazards and risks incident to the occupancy of tenement houses.

The statute contains many provisions carrying out · the purpose and object of the act. Among such provisions are sections 34, 35 and 36, providing for fire escapes; sections 88 to 94, providing for proper spacing to provide air for tenement house occupants; sections 114 to 120, &c., providing for proper window ventilation; sections 123 to 126, &c., providing for proper lighting in the rooms and hallways of tenement houses; sections 133 to 138, &c., providing for cleanliness and sanitary conditions in tenement houses; section 144, &c., providing for proper drainage and classifying the kinds of material to be used; sections 159 to 164, &c., providing for sewerage connections, water-closets and specifying the requirements relating to sanitation.

Under the amendment of 1927 all of the above provisions and many others in the act do not apply in cities bordering on the Atlantic ocean where the house or building is occupied by only three families. Elsewhere in the state, these provisions do apply where the house or building is occupied by three families. The effect of the amendment is to give

less protection to the citizens in cities bordering on the Atlantic ocean than is given to citizens in other cities in the state. In cities of this state, other than those bordering on the Atlantic ocean, the provisions of the Tenement House act must be complied with where the house or building houses three families or more. The classification made by the 1927 amendment is whether the tenement house is located in a city bordering on the Atlantic ocean. We can see no sound reason which can be advanced for this classification. Those who occupy tenement houses in cities bordering on the Atlantic ocean require and are entitled to as much protection in their health and lives as those living in cities elsewhere. Tenement houses in a city bordering on the Atlantic ocean require fire escapes, proper drainage, adequate sanitation, sufficient light and air to the same extent as tenement houses in other cities in this state. There is nothing so far as we can see which makes the requirements mentioned less needed in tenement houses located in cities bordering on the Atlantic ocean. The classification is purely illusory. The conditions respecting the occupancy of tenement houses are the same over all the state, whether it be in cities bordering on the Atlantic ocean or elsewhere. The risks and hazards of such occupancy are the same. The protection and benefits given by the statute are as much needed in cities bordering on the Atlantic ocean as in any other city in this state.

Whether an act is special and local and contravenes the provision of the constitution (article 4, section 7, paragraph 11) prohibiting the passage of special or local laws has been frequently considered in many cases in the past. It is unnecessary to refer to all of them. Reference to a few of the cases will suffice, we think, to show that the act under consideration is special and for that reason unconstitutional and void. In *Central Railroad Co.* v. *State Board of Assessors,* 48 *N. J. L.* 1, Chief Justice Beasley said:

"This discrimination between general and special statutes, as applied to a subject-matter of this kind, is not a new thing to this court. It has long been a recognized doctrine with us, forming the basis of many decisions. When the case of Parsons *v.* Van Riper was first before the court, the matter

was carefully considered. The inquiry in that instance was with respect to the effect of that provision of the amended constitution which forbids the legislature to pass private, local or special laws regulating the internal affairs of towns or counties, and the distinction, in view of that provision, between general and special legislation, was expressed in these words: 'Interdicted local and special laws are those that rest on a false or deficient classification. Their vice is that they do not embrace all of the class to which they are naturally related; they create preferences and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places that are not dissimilar in these respects.' "

In the case of *Clark* v. *Cape May*, 50 *N. J. L.* 558, the question was as to the legality of the discharge of a member of the police force of the city of Cape May under the provisions of an act which contained the proviso that it "shall not apply in and to cities commonly known as seaside and summer resorts." Mr. Justice Scudder, who delivered the opinion of the court, holding the act special and unconstitutional, said:

"They cannot be removed by force of this statute for any reason other than the causes for removal specified in that act, and certainly cannot be discharged without any cause, unless in some way the council are freed from the restraining power of the act. Is, then, the exemption contained in this amended section constitutional in its classification of cities commonly known as seaside and summer resorts in its relation to the removal of members of the police department? This can be answered by applying the test which was briefly put in *Anderson* v. *Trenton*, 13 *Vr.* (*N. J.*) 488. Is the basis of classification some peculiar feature to which the provisions of the law are naturally related? The peculiar feature in this case is that the cities are seaside resorts, the provisions of the law apply to policemen, and the point to be established is the relation between them that makes the classification natural and appropriate. There is nothing in the mere location of these cities by the seaside that makes a more absolute

control of their policemen necessary than in other cases; nor are they less liable than others to be controlled by political reasons, or unworthy motives, which are prohibited in the act. The only peculiar feature that has been presented to us, or can be conceived, is that in the summer months there is a large and constantly changing population composed of those who go to this city for business, health or recreation, and there is more need for protection and watchfulness at that season than in ordinary cities. It appears in this case that in the summer and early fall months, while this travel continued the council employed usually six policemen, while at other parts of the year but three were engaged. It happens in other cities that there are large meetings, parades and crowds of people that are peaceful, and sometimes there are disturbances that threaten breaches of the public peace, which make it necessary that there should be temporary appointments of special officers, in addition to the regular police force, to preserve order. The difference between the two cases is that here the crowd goes to the seaside at a stated time every year, while in other cases it happens occasionally. It does not appear that this is a sufficient distinction to base upon it the classification and exception to the general law appertaining to cities and their police departments. If the necessity of appointing two or three more policemen than would be otherwise needed is to be construed as a sufficient cause for annulling this statute, which was passed to correct the great abuses that were known to exist in our cities before its enactment, in the removal of faithful and capable men from office then there is little protection given by it. The exception, if allowed, will be followed by others, hardly distinguishable, and the evasion of this statute will soon be completed, or the legislature be driven to repeal it."

To the same effect are the cases of *Freeholders of Hudson* v. *Buck,* 51 *N. J. L.* 155; *Wanser* v. *Hoos,* 60 *Id.* 482; *Foley* v. *Hoboken,* 61 *Id.* 478; *Oliver* v. *Burlington,* 75 *Id.* 227.

We hold the 1927 amendment of the Tenement House act special, unconstitutional and void. The judgments in both cases are reversed, with costs.