HAROLD R. SHERWOOD AND ELLIOT UNDERWOOD, PLAIN-
TIFFS, v. BERGEN-HACKENSACK SANITARY SEWER
AUTHORITY, A BODY POLITIC AND CORPORATE OF
THE STATE OF NEW JERSEY; COUNTY OF BERGEN, A
BODY POLITIC AND CORPORATE OF THE STATE OF
NEW JERSEY; A. THEODORE HOLMES, AS TREAS-
URER OF THE COUNTY OF BERGEN, AND WALTER D.
VAN RIPER, AS ATTORNEY-GENERAL OF THE STATE
OF NEW JERSEY, DEFENDANTS.

Decided March 8, 1946.

For the plaintiffs, *L. Stanley Ford.*

For the defendants County of Bergen and A. Theodore Holmes, as treasurer of the County of Bergen, *Milton T. Lasher.*

For the defendant Bergen-Hackensack Sanitary Sewer District Authority, *Walter H. Jones.*

For Walter D. Van Riper, Attorney-General, *Walter D. Van Riper, per se (Joseph Lanigan,* of counsel).

LEYDEN, C. C. J. Plaintiffs, taxpayers in Bergen County, one resident within the other without the proposed Bergen-Hackensack Sanitary Sewer District, seek a judgment under the provisions of *R. S.* 2:26–66, *et seq.; N. J. S. A.* 2:26–66, determining the validity of an act of the legislature entitled: "An act creating the Bergen-Hackensack Sanitary Sewer District, creating an authority to manage the same, and prescribing the powers and duties thereof and of other public bodies in connection with the construction and operation of sewers and sewage disposal facilities in said district, and providing ways and means for paying the costs of construction and operation thereof, and to repeal chapter fifteen of Title 58 of the Revised Statutes," approved May 3d, 1945 (chapter 300 of the Public Laws, 1945; *R. S.* 58:15A–1, *et*

*seq.; N. J. S. A.* 58:15A–1, *et seq.*, and declaring the rights and status of the plaintiffs thereunder (*R. S.* 2:26–69; *N. J. S. A.* 2:26–69) and further declaring (1) that the purported act of the legislature is unconstitutional and void in that it contravenes paragraph 9, section 7, article 4 of the Constitution of the State of New Jersey (*N. J. S. A.*) providing "No private, special, or local bill shall be passed, unless public notice of the intention to apply therefor, and of the general object thereof, shall have been previously given. * * *," and (2) that the act is unconstitutional and void in that it contravenes paragraph 11, section 7, article 4 of the Constitution of the State of New Jersey providing "The legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say: * * * Regulating the internal affairs of towns and counties; appointing local offices or commissions to regulate municipal affairs," and (3) that the County of Bergen and A. Theodore Holmes, treasurer of said county, have no authority or right to pay to the defendant Sewer Authority, and it has no right to receive from the County of Bergen any sums of money to temporarily finance the affairs of the Authority, in violation of paragraph 19, article 1 of the Constitution of the State of New Jersey providing "No county, city, borough, town, township or village shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association or corporation, * * *," and (4) that the Sewer Authority has no right or authority to enter into contracts pursuant to the said act, and (5) that no taxes shall be levied upon the property of the plaintiffs, any portion of which shall provide for the payment to the defendant Sewer Authority.

The pollution of the Hackensack River by sewage and industrial wastes has been a matter of grave public concern for many years. From time to time during the past nineteen years the problem in its various phases has been studied, with the ultimate view of eliminating the pollution. In 1926 by chapter 173 of the Public Laws the legislature prohibited the pollution of the river above the mouth of Bellmans Creek and placed the enforcement thereof in the hands of the State Department of Health, *R. S.* 58:10–42, *et seq.; N. J. S. A.*

58:10–42. In 1930 by chapter 144 of the Public Laws, *N. J. S. A.* 58:15–72, the Hackensack Valley Sewerage District was created to provide a plan for the prevention of the pollution of the river and its tributaries. In 1931 by chapter 178 of the Public Laws, *N. J. S. A.* 58:15–72, the enforcement of the 1926 statute was restrained pending the submission of the report provided for in the 1930 statute and until after May 1st, 1932. In 1932 by chapter 129 of the Public Laws, *N. J. S. A.* 58:15–72, the commission theretofore appointed for the purpose of making investigations, recommendations and the preparation of proposed contract or contracts to carry out the plans theretofore prepared for the relief and prevention of the pollution of the Hackensack River was continued, and the enforcement of the act of 1926 prohibiting the pollution of the river was further restrained until May 1st, 1933. In 1933 by chapter 288 of the Public Laws, *N. J. S. A.* 58:15–72, the legislature, in pointing out that the prevention of the pollution and the reasonable purification of the Hackensack River and its tributaries materially affects conditions in New York Harbor and New York Bay and was a matter of state interest, abolished the commission theretofore functioning under chapter 144, *Pamph. L.* 1930, and provided for the appointment of four commissioners by the Governor with the advice and consent of the senate, to be known as "Hackensack River Sewerage Commission," and further restrained the enforcement of the act of 1926 until May 1st, 1935. Also in 1933 by chapter 373 of the Public Laws (*R. S.* 58:15–1, *et seq.; N. J. S. A.* 58:15–1, *et seq.*) the Hackensack River Sewerage District with an Authority to maintain the same was created. And lastly, in 1945, the legislature by chapter 300 of the Public Laws (*R. S.* 58:15A–1, *et seq.; N. J. S. A.* 58:15A–1, *et seq.*), the validity of which act is now questioned, created the Bergen-Hackensack Sanitary Sewer District. By the act the legislature constitutes all those municipalities now or hereafter existing, all or parts of which are situated and lie within the natural drainage area of the Hackensack River and its tributaries, between the boundary line of Hudson and Bergen Counties and the boundary line between the States of New Jersey and New York, a sewerage

district under the name and title of Bergen-Hackensack Sanitary Sewer District. Forty-nine presently existing municipalities in Bergen County are mentioned by name.

The Bergen-Hackensack Sanitary Sewer District Authority consisting of five members resident within the sewer district, to be appointed by the board of chosen freeholders of Bergen County, is created and constituted a body politic and corporate with perpetual succession as a governmental instrumentality for the purpose, among others, of the protection of public safety, health and welfare, with power to sue and be sued, to adopt and use a corporate seal, to borrow money or contract debt, to issue negotiable bonds and to provide for the rights of the holders thereof, and with the right, power and authority to acquire, use, hold and dispose of all property, real and personal, and to make and perform all contracts and do all acts and things and with all other powers, proper or necessary, to design, finance, construct, acquire and operate such a system of trunk, intercepting and outlet sewers, pumping and ventilating stations, treatment plants and other plants and structures as in its judgment will provide the most effectual and advantageous plan or method for relieving the Hackensack River, and its tributaries and other rivers and streams, whether navigable or otherwise, within the sewer district, from pollution and for preventing pollution of the same and for carrying out and effectuating the purposes and plan provided for. Municipalities within the district are prohibited from entering into contracts or agreements for the construction or operation of sewage disposal plants or other sewerage facilities for the use of more than one municipality except upon the written consent and approval of the Authority. The Authority is directed, with all practical speed, to prepare a project report with maps, designs and costs which shall show a proposed plan or method of construction of the district sewer system, which project report must be submitted to the State Board of Health for approval of the proposed district sewer system as a sanitary measure. The Authority is authorized to negotiate and enter into contracts with municipalities and private sewer companies and industries within the sewer district, and with other municipalities and private sewer

companies which may be discharging sewage directly or indirectly into the Hackensack River or its tributaries and which might advantageously use the facilities of the district sewer system, but any municipality not entering into a contract with the Authority may construct its own sewage disposal plant for its own sole use. No municipality in the drainage area of the Hackensack River is excluded from the benefits of the act, or denied the right to contract with the Authority for the disposal of its sewage. Industries within the district may so contract.

The County of Bergen is authorized to pay such amounts as may be agreed upon on the orders of the Authority, for the purpose of assuring money to pay its costs and expenses in preparing the project report and of doing all other acts and things authorized by the act up to the time of the commencement of the construction or acquisition of the district sewer system. The money so advanced by the freeholders of Bergen County shall be repaid by the Authority out of the proceeds of the sale of any bonds which may be issued by the Authority.

An examination of the entire act, as by a reference to the provisions thereof it will more particularly appear, discloses a governmental scheme for the elimination of the pollution of the Hackensack River within the district, in the protection and promotion of the public health, safety and general welfare. The purpose of the act is to provide the means, within the designated area, of establishing, maintaining and operating a public work for the public purpose of taking up the problem of the disposal of sewage of each named municipality at the point where that municipality lays it down, through a proposed instrumentality of the state.

The dispositive question is whether this enactment is obviously a private, special or local bill within the constitutional interdiction.

"As applied to legislation of this character a law is special or local, as contradistinguished from general, in the sense of the prohibitory clauses in this paragraph of the constitution, which embraces less than the entire class of persons or places to whose condition such legislation would be necessary or

appropriate, having regard to the purpose for which the legislation was designed. A law which so particularizes, and, by such means is restricted in its operation to persons or places which do not comprise all the objects which naturally belong to the class, is special or local, within the meaning of the constitutional interdict." *State* v. *Somers Point, 52 N. J. L.* 32; 18 *Atl. Rep.* 694.

"A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained the law is general. Within this distinction between a special and a general law the question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legitimate classification of its objects it is a general law. Hence, if the object of a law have characteristics so distinct as reasonably to form, for the purpose legislated upon, a class by itself, the law is general, notwithstanding it operates upon a single object only; for a law is not general because it operates upon every person in the state, but because every person that can be brought within its predicament becomes subject to its operation." *Budd* v. *Hancock, Comptroller, 66 N. J. L.* 133; 48 *Atl. Rep.* 1023.

"Interdicted local and special laws are all those that rest on a false or deficient classification; their vice is that they do not embrace all of the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects." *Van Riper* v. *Parsons, 40 N. J. L.* 1.

"The purpose of the prohibition against 'special or local' laws is not to prevent legislation where there is but one individual to be dealt with. The purpose is to prevent unfounded discrimination where there are two or more individuals to be

dealt with." *Van Cleve* v. *Passaic Valley Sewerage Commissioners*, 71 *N. J. L.* 183; 58 *Atl. Rep.* 571.

"The test of the generality of a law adopted is that it shall embrace all and exclude none whose conditions and wants render such legislation equally appropriate to them as a class. * * * The question whether any particular statute is local or special must be determined not upon its compliance with a legislative classification, but upon whether, having regard to the character of the legislation and the limitation upon it contained in the act, the statute is or is not a general law as defined by the courts.

" 'In determining whether this act is general, within this meaning (that is, whether the class is composed of all municipalities which, considering the purposes of the legislation, are distinguished from others by qualities or characteristics such as to make the legislation appropriate to them and inappropriate to others), its purpose is first to be considered, and it is then to be determined whether the municipalities on which it operates have substantial distinctions segregating them from other municipalities, and evincing that such legislation is germane to them and not to others.' In every case the primary consideration in the process of determining whether a particular law, local or special on its face, is a general law in the sense of the constitution is the consideration whether the classification adopted is based on those substantial grounds which justify the limitation of its enactments to one set of municipal bodies and the exclusion of others." *Wanser* v. *Hoos*, 60 *N. J. L.* 482; 38 *Atl. Rep.* 449.

The sewerage district created by the act does not embrace the entire natural drainage area of the Hackensack River within the State of New Jersey. It designates a smaller area through which a segment of the river runs, and sets it apart as a sewer district in which pollution of the river is to be eliminated. By its terms it excludes the remaining drainage area and the municipalities located therein, to which although but for the limitation, the objects, purposes and provisions of the act would manifestly be appropriate. If the sewerage district set apart for this laudable purpose embraced the drainage area of the river for its full length within the state, it would

not be difficult to demonstrate that the territory drained by the river, its population, the river itself, its course, tidal flow, the quality and quantity of its pollution and other characteristics, present a unique and exceptional problem justifying special treatment, and the act would undoubtedly be considered a general one, though local in its application, and therefore constitutionally unobjectionable under the authority of *Van Cleve* v. *Passaic Valley Sewerage Commissioners,* 71 *N. J. L.* 183; 58 *Atl. Rep.* 571; 71 *N. J. L.* 574; 60 *Atl. Rep.* 214. But the act in question arbitrarily excludes from the sewerage district comparable persons, places or things having the same, certainly not dissimilar, qualities and situations, namely, the drainage area and the municipalities south of the boundary line between the counties of Bergen and Hudson, to which the objects, purposes and provisions of the act are appropriate. See *Board of Tenement House Supervision* v. *Mittleman,* 104 *N. J. L.* 486; 141 *Atl. Rep.* 571. The appropriateness of its provisions to the other areas and municipalities outside the sewerage district but within the natural drainage area of the river is recognized in the act itself in section 33, wherein it grants to the Authority the power to negotiate and enter into contracts with any other municipality not within the district which may be discharging sewage into the river or its tributaries and which might advantageously use the facilities of the proposed district sewer system. The act, therefore, in so far as it attempts to create the Bergen-Hackensack Sewer District, comes within the judicial definitions of a special or local law, and since it is conceded by all parties that no public notice of intention to apply for the enactment thereof was given previously to its passage, pursuant to the constitution and *R. S.* 1:6–1, *et seq.; N. J. S. A.* 1:6–1, *et seq.,* the act contravenes paragraph 9, section 7, article 4 of the constitution and is void. Taking this view, it becomes unnecessary to determine whether the act violates paragraph 11, section 7, article 4 and paragraph 19, article 1 of the constitution.

A *postea,* pursuant to Supreme Court rule 113, *N. J. S. A. tit.* 2, containing any necessary finding of fact and the determination of the points of law involved in the decision, may be prepared.