THE INHABITANTS OF THE TOWNSHIP OF BERNARDS, IN THE COUNTY OF SOMERSET, ET AL., PLAINTIFFS IN ERROR, v. ANNA SKINKLE ALLEN ET AL., DEFENDANTS IN ERROR.

THE INHABITANTS OF THE TOWNSHIP OF BERNARDS, IN THE COUNTY OF SOMERSET, ET AL., PLAINTIFFS IN ERROR, v. GEORGE B. POST ET AL., DEFENDANTS IN ERROR.

1. The right of taxation is vested in the people, but legislation is necessary to exercise the power of taxation. Under our form of government this legislative power is lodged in the first instance in the legislature of the state. The legislature, in the exercise of its sovereign power, may confer upon the minor political subdivisions of the state (which are merely instrumentalities for the better administration of the government in matters of local concern) power to impose and levy taxes and assessments to provide the revenue by which municipal expenses are borne and debts and liabilities paid, on the principle that for local purposes the local authorities are the representatives of the people.

2. The powers conferred on boards of freeholders in the counties and upon other political subdivisions, such as cities, towns, townships, &c., are instances in which this power had been conferred upon minor subdivisions of the state.

3. Except as the legislature may confer upon political subdivisions power to legislate and to provide revenue for defraying expenses of the local governments, it has no power to delegate the power of taxation to ministerial officers or to another department of the government. It

may provide for the appointment of officers and other persons to assess and collect taxes, but the essential power of taxation, which is the power to levy a tax, is incapable of being delegated by the legislature.

4. By a series of acts from an early period the inhabitants of every township, precinct or ward were created a body politic and corporate, and the freeholders and inhabitants were authorized in town meetings to vote, grant and raise such sum or sums of money as should be required for local purposes, and also to raise the quota of county taxes fixed by the board of chosen freeholders of the county, to be assessed, levied and collected at such times and in such proportions as the said town meetings should elect and appoint.

5. By an act passed March 20th, 1884, entitled "An act to provide for and secure the raising of revenue for the execution of the public duties of maintaining public schools, preventing the destruction of property by fire, preserving the public health, supporting the poor, maintaining police and keeping the highways and streets in a safe condition for public use within the limits of incorporated cities, towns and municipalities in cases where the 'local or municipal authorities or officers fail to provide for the performance of such duties" (*Gen. Stat., p.* 3411), the governor was authorized to appoint a commission of three freeholders, to be known as commissioners of taxation, in the event that local boards or officers should neglect or fail to levy the taxes for local purposes specified in the act, or there being a vacancy in the local boards or officers or the boards or officers have not commenced the assessment or valuation of property for taxation or the said taxes have not been levied at the time required by law, whose duty it should be to assess and levy such taxes. The act, in defining the duties of these commissioners and prescribing the powers conferred upon them, enacted that they should have power to levy taxes for such sums as they should deem expedient for the enumerated purposes. Commissioners were appointed by the governor for the township of Bernards and taxes were assessed by them pursuant to the act. *Held,* that the act is a delegation of the power of taxation in violation of the fundamental principles of our government and is unconstitutional and void, and that the taxes assessed by the said commissioners were illegal.

On *certiorari* to the Supreme Court in matter of taxation, and writ of error upon the judgment of the Supreme Court thereon. For opinion of the Supreme Court, see 28 *Vroom* 303.

For the plaintiffs in error, *Richard V. Lindabury.*

For the defendants in error, *Francis E. Marsh* and *Frank B. Allen.*

The opinion of the court was delivered by

DEPUE, J.   The township of Bernards was incorporated as one of the townships of this state, with all the rights, privileges, powers, &c., given and granted by the General Township act of 1846 and the supplements thereto.   By section 4 of that act the freeholders and inhabitants who are qualified to vote at town meetings, were given full power and were directed and required to assemble and hold town meetings in their respective townships at the places designated in the act.   By section 8 the persons qualified to vote at town meetings were authorized to make and ordain such regulations and by-laws as the majority of them so assembled should from time to time judge necessary and proper for certain local purposes.   Section 11 enacted " that the persons qualified to vote at town meetings shall be and they are hereby empowered at their annual meetings, or at any other meeting duly held for the purpose, to vote, grant and raise such sum or sums of money for the maintenance and support of the poor, the building and repairing of pounds, the opening, making, working and repairing of roads and keeping them in order, in such townships as are authorized to repair their highways by hire, the destruction of noxious wild animals and birds, for running and ascertaining the lines, and prosecuting or defending the common rights of such township, and for other necessary charges and legal objects and purposes thereof, as are or shall be by law expressly vested in the inhabitants of the several townships of this state, by this or some other act of the legislature ; which money so voted and granted shall be assessed, levied and collected by the same persons, in the same manner, and under the like fees, fines and penalties as the money raised in such township by the board of chosen freeholders of the county shall be assessed, levied and collected, and at such times and in such proportions as the said town meetings respectively shall direct and appoint ; provided, that the said fines and penalties shall, when recovered, be paid to the clerk of the said township, and be applied to the use of the said township, in such manner as shall from

time to time be directed and appointed at their annual meeting." *Gen. Stat., p.* 3579.

At the annual town meeting of the inhabitants of Bernards township, held pursuant to law March 4th, 1893, the sum of $1,200 was by a vote of the qualified voters ordered to be raised for the support of the poor, $4,000 for roads and $500 for removing snow. On application to the governor pursuant to the provisions of an act passed March 20th, 1884, entitled "An act to provide for and secure the raising of revenue for the execution of the public duties of maintaining public schools, preventing the destruction of property by fire, preserving the public health, supporting the poor, maintaining police and keeping the highways and streets in a safe condition for public use within the limits of incorporated cities, towns and municipalities, in cases where the local or municipal authorities or officers fail to provide for the performance of such duties " (*Gen. Stat., p.* 3411), the governor appointed three persons, freeholders and residents of the township, as commissioners of taxation for the said township. The commissioners, in pursuance of the authority conferred upon them in virtue of the said appointment, made a new levy of taxes under the provisions of the said act, and resolved to levy on the taxable property in the township $2,000 for the protection and maintenance of public health, $2,300 for the maintenance and support of the poor, $324 for the support and maintenance of a police force, $14,000 for keeping the highways and streets in a safe condition for public use and $1,700 for the expense of assessing and collecting such taxes and to meet deficiencies, making in all the sum of $21,124 in lieu of the sum of $5,700, the aggregate amount of appropriations voted at the town meeting, and fixed a percentage of $1 per thousand upon the valuation of taxable property as the rate of taxation.

On the hearing of the *certiorari* the Supreme Court exscinded so much of the levy of the commissioners as exceeded the amounts appropriated by the town meeting for supporting the poor and for keeping highways in a safe condition, on the

ground that the town meeting had performed its duty in relation to the poor and roads of the township, and consequently the commissioners, under the statute referred to, had no power to levy taxes for those purposes. The court also excluded the levy of the commissioners for the support of a police force, for the reason that no police force had been established in the township. The court allowed the levy of the commissioners for the protection of public health to stand, on the ground that it was the duty of the voters of the township, at the town meeting, to provide for raising funds for these purposes. The levy of the commissioners to meet the expense of assessing and collecting the taxes imposed by them and to meet deficiencies was reduced to the sum of $200.

The writ of *certiorari* was sued out by certain taxpayers of the township, and the township authorities, being dissatisfied with the judgment of the Supreme Court, prosecuted this writ of error. The claim of the plaintiffs in error is that the judgment of the Supreme Court was erroneous in that the taxes levied by the commissioners were in all respects within the powers conferred on the commissioners by the act. On the argument of the writ of error, this court of its own motion directed that the case should be reargued on the constitutionality of the act of 1884, and the case was accordingly reargued on constitutional grounds.

The material parts of this act will be stated presently. A preliminary consideration of the source of the power of taxation, and the principles by which power of taxation is controlled, will be serviceable. Under the Norman kings of England, the right to tax to obtain money for public uses was vested in the king, and was exercised by him at his own will. The money directed by him to be raised, was assessed on persons or property by the officers of the exchequer, collected by the sheriff and paid into the exchequer. The expenses of foreign wars increased the burden of taxation upon the English people, and, taxes becoming so onerous, there was resistance, and by force the power of taxation was renounced by the crown and conceded to the people. This

result was accomplished by several charters granted by the crown.

Not the earliest but the most conspicuous of the early concessions in this respect, was the Great Charter granted by King John.   By this charter and others that followed it the renunciation of the right of taxation was given to, and the right of taxation conferred upon, the people.   In the charter of the ninth year of Henry III., the grant in the first chapter is expressed in these terms :  " We have granted also and given to all the freemen of our realm, for us and our heirs forever, these liberties underwritten, to have and to hold, to them and their heirs forever."    By the confirmation of the Charter of Liberties of Englishmen, granted 25th Edward I. (which, as was said by Sir Edward Coke, " is but an explanation of this branch of *Magna Charta,*" 2 *Co. Inst.* 59), it was granted as well to the archbishops, &c., and also to the earls, &c., and " to all the communality of the land, that for no business henceforth we shall take such manner aids, talks nor prizes, but by the common assent of the realm."   By a later grant contained in the statute *de tallagio non concedendo*, passed in the thirty-fourth year of Edward I., it was expressly granted that " no tallage or aid shall be taken or levied by us or our heirs in our realm without the good will and assent of archbishops, bishops, earls, knights, burgesses and other freemen of  the land."    Sir  Edward  Coke in  his comment upon this statute says " that the word *tallagium* is a general word and doth include all subsidies, taxes, tenths, fifteenths, impositions and other burdens or charge put or set upon any man."    2 *Co. Inst.* 533.    By the charter in the twenty-eighth year of Edward I., which was a confirmation of previous charters, it is recited that " forasmuch as the articles of the Great Charter of Liberties and of the Charter of the Forest, the which King Henry, father of our king that now is, granted to his people for the weal of the realm, have not been heretofore observed and kept because there was no punishment executed upon them, which offended against the points of the charters before mentioned, our lord the king hath again granted, renewed and con-

firmed them at the request of his prelates, earls, &c., assembled in parliament, &c., and hath ordained and enacted and established certain articles, against all them that offend contrary to the points of the said charters or any part of them or that in anywise transgress them in the form that ensueth; that is to say, that from henceforth the Great Charter of the Liberties of Englishmen, granted to all the communality of the realm, &c., shall be observed, kept and maintained in every point," &c. Sir Edward Coke's comment on this charter is that "here ' *commune*' is taken for people, so as '*tout le commune*' is taken here for all the people, and this is proved by the sense of the words, for *Magna Charta* was not granted to the commons of the realm, but generally to all the subjects of the realm, to those of the clergy and those of the nobility and to the commons also, and that '*commune*' in this place signifieth people. * * * So '*a la commune*' here signifieth not to the commons of the realm, but to the people of the whole realm." 2 *Co. Inst.* 540.

Though by these concessions the right of taxation was vested in the people of England, a legislative power was essential to a grant of money and for providing the means by which moneys so granted should be raised by taxation; but this legislative function was exercised in parliament in a manner not in the ordinary course of legislation. The house of commons, as the representatives of the people, always claimed, and still does claim successfully, the exclusive right to originate money bills, reducing the house of lords to the alternatives of passing or rejecting such bills sent up to it by the house of commons for their consideration.

The right of the popular branch of the government to originate and adopt measures for providing revenue for public purposes was asserted by the colonial assembly as early as 1748. Acts had been passed granting money for the use of the colony, to give effect to which an act was necessary to settle the quotas of the respective counties. Such an act was passed by the house of assembly and sent to the council. The council made amendments to the bill. The house of

assembly rejected the amendments, and sent a message to the council unanimously refusing a conference, with a resolution that the council had no right to amend any money bill whatever, and therefore they (the assembly) do reject the said amendments and adhere to the bills as passed by the assembly, and that the house looks upon their amending the said bills to be a manifest infringement upon the rights and privileges of this house, and those whom they represent. To a message from the governor, representing the great need of the means of carrying on the government and expressing a desire for concord and unity in the deliberations of the two houses, the assembly returned an address stating that they had passed several bills for that purpose and sent them to the council for their concurrence; that the council took upon themselves the liberty of amending them, which was an infringement upon the privileges of this house and the liberties of the people, by depriving them of the natural rights of his majesty's subjects of being taxed in such a manner as they like best. This controversy continued, leaving the government without adequate support for nearly four years, until the session of February 11th, 1752, when the council passed the bill sent up by the house of assembly. *N. J. Archives, 1st Series, Vol. XVI., pp.* 22, 201, 218, 256, 352, 357. The privilege thus asserted by the house of assembly was conceded during the colonial period, and was embodied in section 6 of the constitution of 1776 in these words: "That the council shall also have power to prepare bills to pass into laws, and have other like powers as the assembly, and in all respects to be a free and independent branch of the legislature of this colony, save only that they shall not prepare or alter any money bill, which shall be the privilege of the assembly." *Const.* 1776, § 6. This provision stands in our present constitution in a modified form, as follows: "All bills for raising revenue shall originate in the house of assembly, but the senate may propose or concur with amendments as on other bills"—which is substantially the same as section 7, article 1, of the constitution of the United States.

As already observed, the right of taxation is vested in the people; but legislation is necessary to exercise the right of taxation. Under our form of government this legislative power is lodged, in the first instance, in the legislature of the state. The legislature, in the exercise of its sovereign power, may confer upon the minor political subdivisions of the state (which are merely instrumentalities for the better administration of the government in matters of local concern), power to impose and levy local rates, taxes and assessments to provide the revenue by which municipal expenses are borne and debts and liabilities paid, on the principle that for local purposes the local authorities are the representatives of the people. The powers conferred on boards of chosen freeholders in the counties, and upon other political subdivisions, such as cities, towns, townships, &c., are instances in which this legislative power has been conferred upon minor subdivisions of the state. The townships, from an early period, were accustomed to regulate their local affairs and provide means for local purposes by a vote of the inhabitants assembled in town meeting, probably, in the first instance, without statutory authority. The Tax act passed in 1686, entitled "An act for rates for highways," recites "that as there is no provi-ion yet made for empowering the respective inhabitants of each town or hamlet to make assessments or rates or defraying the charge of the same," and enacts "that it shall be lawful for the inhabitants of each town or hamlet, &c., to meet together and choose five of their inhabitants, who shall have power to make such rates and taxes for making and maintaining all highways, bridges, landings and ferries as are laid out, and also for defraying all public charges within their respective limits, the said rates and taxes to be confirmed, approved and amended by the Quarter Sessions and collected by a constable by a warrant issued by some justice of the peace." The act also provides "that the persons so to be chosen shall have power to make such orders touching and concerning fences as they shall see meet for the good of the respective towns and hamlets." *Leam. & Spi.*, p. 294.

By an act passed January 26th, 1716–17, the freeholders and inhabitants, householders of every town, division, precinct and district within the several counties of the province, were authorized to meet on a day mentioned, yearly and every year, and by plurality of votes choose one assessor and one collector for the town, division, precinct or district for which they are chosen for the ensuing year. *Allin. L.*, *p.* 35.

By the act of June 28th, 1766, it was enacted that no person or persons except in towns corporate should have the privilege to give his or their voice or vote at any town meeting for electing any town or precinct officer or officers or other business to be done or transacted at any town meeting, unless the person offering such vote is a freeholder, a tenant for years or householder and resident in such township or precinct. *Allin. L.*, *p.* 288.     The act passed February 21st, 1798, embodied the several statutes relating to townships in the general act, which is substantially our present act.     It constituted the inhabitants of every township, precinct and ward a body politic and corporate by certain names mentioned. The freeholders and inhabitants qualified to vote were required to assemble at town meetings at a specified time, and were authorized to elect officers for their government and to make and ordain such regulations and by-laws as the majority of them so assembled should judge necessary and proper for certain local purposes.     The eleventh section of that act conferred upon the qualified voters of the township at such town meetings the right to vote and grant money for specified local purposes.     The eighth section of our present act is in all material respects a copy of section 11 of the act of 1798. *Pat. L.*, *p.* 276; *Rev. L.*, *p.* 332.     The legislation just referred to constituted the qualified voters of the township assembled in town meeting the legislative body by which the affairs of the township were administered, and invested the town meeting with power to appropriate and raise moneys by taxation for local purposes.

Except as the legislature of the state may confer upon political divisions powers to legislate and to provide revenue for

defraying the expenses of the local governments, it has no power to delegate the power of taxation to ministerial officers or to another department of the government.  *Cooley Tax., p.* 47; 25 *Am. & Eng. Ency. L., pp.* 79, 186.  It may provide for the appointment of officers and other persons to assess and collect taxes, but the essential power of taxation, which is the power to levy a tax, is incapable of being delegated by the legislature.

Every system of taxation consists of two parts—one the levying of taxes, the imposition of taxes on persons or property; the other the assessment and collection of taxes.  The first is a legislative function controlled by constitutional prescriptions; the other, the assessment and collection of taxes, is mere machinery by which the legislative purpose is effectuated.  Whether taxes shall be assessed and collected by officers elected by the people, called assessors and collectors, or by officers holding office under some other authority, is left to legislative discretion.  *Trustees of Public Schools* v. *Trenton,* 3 *Stew. Eq.* 667, 678.  " The legislature must prescribe the rule under which taxation shall be laid, and originate the authority under which taxing officers assess and collect the taxes; it need not prescribe all the details or fix with precision the sum to be raised.  If the rule is prescribed which, in its administration, works out the result, that is sufficient; but to refer the making of the rule to another authority would be in excess of legislative power.  To leave to a state officer or board the power to determine whether a tax should be laid for the current year, or at what rate, or upon what property, prescribes no rule and originates no authority; it merely attempts to empower some other tribunal to prescribe a rule and set in motion the tax machinery.  This is clearly incompetent."  *Cooley Tax., p.* 50.

The legislature, having prescribed a rule of taxation, may entrust the assessment and collection of taxes, in conformity with prescribed rules, to officers appointed by other authority.  The acts providing for taxation of railroads and canals are precedents of this import.  The legislature prescribed that

certain designated property of these corporations should be taxed at an assessed valuation at an annual state tax of one-half of one per cent. The valuation of the property with respect to which taxes were imposed, and the computation of the amount of taxation thereon, were matters committed to a state board of assessors appointed by the governor. The legislature, in this instance, prescribed the rule by which taxation should be made, and committed to the state officers the ministerial duties of ascertaining by valuation, computation and assessment the amount of tax to be paid by these companies. *Gen. Stat., pp.* 3322, 3324, 3334. The act establishing a state board for the equalization, revision and enforcement of taxation, the members of which are appointed by the governor, is of the same character. This act does not confer upon these commissioners the power to originate taxation.

The duty of the board consists in an examination into the administration of the laws regulating the assessment of taxes, in order to secure the equalization, revision and enforcement of taxation as prescribed by law, with power to direct assessors and other taxing officers to make a reassessment of taxation so that the same may conform to constitutional or other legal rules. *Gen. Stat., p.* 3344. The statute (*Gen. Stat., p.* 3404, § 547) which empowers the court on *certiorari* to revise and correct taxes and make a new assessment is of like import. It confers upon the court no power to tax. It simply requires the court, under its own rules, to correct and amend an assessment of taxes brought up by *certiorari*, so that it may conform to the laws in virtue of which the taxation was imposed, and to ascertain and determine for what sum such person or property was legally liable to taxation. 25 *Am. & Eng. Ency. L.* 81, *note* 2. But the essential power of taxation, the power to levy a tax, cannot be delegated by the legislature. In *State* v. *Sickels*, 4 *Zab.* 125, the Supreme Court held that a resolution of a town meeting to raise for general township expenses as much as the township committee should direct, "ways and means left to the committee," was illegal as a delegation of the taxing power which

the town meeting could not delegate or transfer to the township committee or any other officer.  In *State* v. *Koster*, 9 *Vroom* 308, it was decided that a vote of the town meeting " for notes and bonds to be left to the town committee " was illegal.  It appeared in that case that there were outstanding notes and bonds made by the township.  The court held that if the vote of the town meeting had authorized the raising of money to pay such notes, leaving the calculation of the amount to the committee, as the amount ordered to be raised could be made certain by mere computation, the action of the town meeting would have been legal, but that a resolution to leave the amount to be raised in the discretion of the town committee was unauthorized.  In *Munday* v. *Rahway*, 14 *Vroom* 339, 347, an act by which the court was required to determine what rate of taxation could be imposed on a corporation without injury to the interests of its creditors, was held to be invalid, on the ground that it conferred upon the courts a purely legislative function.  These decisions are precedents in our own courts, affirming the want of power in the legislative body in which the power of taxation is vested, to delegate the authority to others to determine in its judgment or discretion the amount to be raised by taxation.

The first section of the act under consideration provides that in case the local boards or officers shall neglect or fail to levy the taxes specified in section 5 of the act, or there be a vacancy in the local boards or officers, or the boards or officers have not commenced the assessment or valuation of property for taxation, or the said taxes have not been levied at the time required by law, it shall be the duty of the governor, upon notice to the local authorities, to appoint and commission three freeholders, who shall be residents of such city, town or municipality, to be known as commissioners of taxation, whose duty it should be, under the authority of the act, to assess and levy the taxes specified in section 5, and to discharge all other duties therein required.

It does not appear in the case that the assessor elected for the township had vacated his office, but it was admitted by

counsel on the argument that the assessor had resigned, and it will be assumed for present purposes that there was a vacancy in that office, and that the appointment of commissioners was made on the two grounds that the township authorities—that is, the town meeting of the township—had not made adequate provision for taxation for the purposes mentioned in the fifth section of the act, and that there was also a vacancy in the office of assessor.

The fifth section, which defines the duties of these commissioners and prescribes the powers conferred upon them, enacts that the commissioners "shall have power to levy taxes for such sums as they shall deem expedient for the following and no other purposes: 1. For the support of public schools and the repair of school-houses. 2. For protecting property within such city, town or municipality from fire. 3. For the protection and maintenance of the public health within such city, town or municipality. 4. For the maintenance and support of the poor. 5. For the support and maintenance of a police force within such city, town or municipality. 6. For keeping the highways and streets within the limits of such city, town or municipality in a safe condition for public use. 7. For the expenses of assessing and collecting the taxes levied under this act, and in addition thereto a sum to meet deficiencies not exceeding ten per cent. of the sums required to be raised for the above-stated purposes."

The objects enumerated in this section for which these commissioners were authorized to levy taxes—support of public schools, repairs of school-houses, protecting property from fire, protecting the public health, support of the poor, maintenance of a police force and the repair of highways and streets—comprise a large part of the duties of municipal governments, for defraying the cost and expenses of which the local power of taxation is exercised; and the act by its terms applies to all incorporated cities, towns and municipalities. The expenditures annually for these purposes in the cities, towns and municipalities to which the act applies are very large, and the authority to make appropriations for these

purposes and levy taxes therefor, independent of this act, was lodged in the local municipal government.

This act does not purport in any sense to confer on local municipal bodies powers of taxation. Its legal effect is to delegate the powers mentioned in the act to three persons appointed by the governor. In making this delegation the legislature prescribed no rule by which the taxation should be laid. The power conferred upon the commissioners was in express words the "power to levy taxes," with no prescription or limitation, except that the taxes levied for any one year for all purposes should not exceed one and one-quarter per cent., and commits to the judgment and discretion of the commissioners the right to determine whether taxes for the purposes mentioned should be laid, and at what rate and upon what property, as they might deem expedient. Plainly the scheme of taxation devised by this act is a delegation of the power of taxation. A decision which would sustain this legislative action would antagonize fundamental principles of constitutional law and in effect overrule State *v.* Sickels, State *v.* Koster and Munday *v.* Rahway, above cited. In this respect the act is unconstitutional.

Some of the sections provide for the performance of mere ministerial duties in the assessment of taxes—duties which the legislature, having perfected a scheme of taxation, may delegate to other persons. Whether these sections can be separated from the main provisions of the act, and sustained as in themselves an exercise of competent legislative authority within the doctrine laid down by this court in *Johnson* v. *State*, 30 *Vroom* 535, need not be decided in this case. The writ of *certiorari* was allowed on condition that taxes assessed in compliance with the vote of the town meeting should first be paid, and the same were paid, and persons assessed for such taxes have not taken out writs of error, and no reason appears on this record which would present that question for decision. The result is that the judgment of the Supreme Court, in so far as it sustains the assessment of taxes voted at the town meeting, should be affirmed, and with respect to the assess-

ment of taxes beyond the amount so voted it should be reversed.

*For affirmance*—THE CHIEF JUSTICE, COLLINS, GARRISON, LUDLOW.   4.

*For reversal* (and disposition suggested in opinion)—THE CHANCELLOR, DEPUE, GUMMERE, LIPPINCOTT, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON, VREDENBURGH.   11.