203 N.J. Super. 230 (1985)
496 A.2d 714
ATLANTIC CITY CASINO HOTEL ASSOCIATION, APPELLANT,
v.
CASINO CONTROL COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 13, 1985.
Decided July 12, 1985.
*233 Before Judges McELROY, DREIER and SHEBELL.
Glenn P. Callahan argued the cause for appellant (Budd, Larner, Kent, Gross, Picillo & Rosenbaum, attorneys).
Leonard J. DiGiacomo argued the cause for respondent (Robert J. Genatt, attorney; John R. Zimmerman, of counsel and on the brief; Mr. DiGiacomo, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
In this appeal the Atlantic City Casino Hotel Association challenges the validity of the July 2, 1984 amendments to the license fee and work permit regulations of the Casino Control Commission, 16 N.J.R. 1809, as well as the provisions of N.J. *234 A.C. 19:41-9.4(f). Following the Commission's publication of its proposals in the New Jersey Register the Association filed written objections to the proposed amendments, appeared at the public meeting on the amendments and orally expressed its opposition. Its principal objection is that the regulations do not require other licensees to pay the Commission's full cost of investigating, processing and regulating them, thereby shifting to the casinos the burden of paying for any shortfall. Appellant's motion for a stay of implementation of the amended regulations pending this appeal was denied by this court and by our Supreme Court.

I
Appellant first attacks the amendment to N.J.A.C. 19:41-9.5 which increased the work permit fee charged a casino for each employee from $30 to $50 per year. The regulation states:
In accordance with Sections 106 and 142 of the Act [N.J.S.A. 5:12-106 & -142], a casino licensee shall obtain work permits for all persons appointed or employed by such licensee. Each casino licensee shall pay an annual fee of $50.00 for each work permit obtained.
The Casino Control Act as it concerns work permit fees provides:
The commission shall, by regulation, establish annual fees for the issuance and renewal of work permits for the various classes of employees, which fees shall be payable by the employer licensee. [N.J.S.A. 5:12-142]
Appellant asserts that the $50 fee so far exceeds the actual cost to the Commission that it compels the conclusion that the Commission is using the fee as a "disguised technique for raising revenue" for its general operations.
Appellant requested from the Commission certain figures concerning its operation and concludes from the information supplied that the Commission's expenditures in processing work permits for the period from 1979 to 1983 were about $375,000, while the revenue from work permit fees totalled $5.5 million. The Commission has not attempted to refute these figures but instead argues that there is no impropriety and that the work permit process must be seen in the larger context of employee licensing and regulation to which the Commission devotes vast *235 resources which are not funded by any specific fees. It declared in its brief:
... [T]he Commission is merely attempting to allocate some of the costs of employee licensing among the casino licensees in a way that reflects the relative benefits enjoyed by each casino licensee due to the creation and maintenance of the pool of licensed and qualified employees.
The Commission points out that the Act creates two categories of licensees: the casinos themselves (N.J.S.A. 5:12-139) and casino employees (N.J.S.A. 5:12-141 & -142). It notes that with regard to the licensing of casinos the statute specifically provides that the licensing fees are to be based on actual costs, whereas in dealing with fees to be assessed to employee licensees (N.J.S.A. 5:12-141) and to the casinos for employee work permits (N.J.S.A. 5:12-142) the statute fails to provide that the fees be based upon costs. The Commission concludes that the differing treatment of these two categories of licensees "reflects a legislative recognition and judgment that casino applicants and licensees benefit directly or indirectly from all aspects of the regulatory process and are best suited to bear the largest share of the costs incurred by the agencies in implementing that process." N.J.A.C. 19:41-9.1b.
We agree with appellant that the work permit fees charged to the casinos for its employees must be reasonably based upon and not exceed the approximate cost of processing, monitoring and administering the permits. We recognize that the Legislature has on occasion when granting statutory authority for charging licensing fees specifically provided that the fee shall not be fixed at a level higher than the amount estimated to be required, just as it has done in other areas of the Casino Control Act. See, e.g., N.J.S.A. 45:1-3.2 (dentistry licenses); N.J.S.A. 58:10A-9 (Department of Environmental Protection fees); N.J.S.A. 5:12-139 (casino licenses). However, the ultimate test of validity transcends such legislative proscription.
A prima facie case has been made that the work permit fee does not seek to compel persons who cause expense to pay for it but rather is an assessment to produce revenue. *236 See Bellington v. East Windsor Tp., 17 N.J. 558, 566 (1955). The power to originate a tax for revenue, under the Constitution of this state, is vested in the General Assembly. N.J. Const. (1947), Art. IV, § 6, ¶ 1. The Legislature may confer upon the minor political subdivisions of the State the "power to impose and levy local rates, taxes and assessments to provide the revenue by which municipal expenses are borne and debts and liabilities paid, on the principle that for local purposes the local authorities are the representatives of the people." Tp. of Bernards v. Allen, 61 N.J.L. 228, 236 (E. & A. 1897). The Legislature may not however "delegate to another body, having no governmental functions, the authority to determine in its judgment or discretion, the amount to be raised by taxation...." Van Cleve v. Passaic Valley Sewerage Comm'rs, 71 N.J.L. 574, 583 (E. & A. 1905).
The Legislature need not prescribe with detail and precision the sum to be raised but they must prescribe the rule under which taxation shall be laid in addition to originating the authority under which taxing officers assess and collect the taxes. Allen, 61 N.J.L. at 238. The power to charge for the privilege to apply for a license to engage in a particular activity must, in the absence of express legislative authority in such circumstances as are constitutionally permissible, be based upon the exercise of the police power and be limited to the approximate cost of administering the process of reviewing the application and controlling or regulating the exercise of the license when granted. See Moyant v. Paramus, 30 N.J. 528, 546 (1959); Daniels v. Point Pleasant, 23 N.J. 357, 361 (1957); cf. Ind. Elec. Assoc. of N.J. v. N.J. Bd. of Exam., 54 N.J. 466, 482 (1969). The Legislature as the constitutional body having the power of taxation may enact taxes including a license tax but may not delegate that right to a non-governmental body such as the Casino Control Commission. See Van Cleve, 71 N.J.L. at 583. The Legislature may of course delegate to a regulative administrative agency the authority to impose a license fee to defray the costs of review of applications and of *237 regulation and control providing the delegation is with sufficient guidelines and standards. See Avant v. Clifford, 67 N.J. 496, 549-53 (1975). The sufficiency of such standards, as stated by the Commission, is to be determined by an examination of the entire enabling act, its surroundings and objectives. Ward v. Scott, 11 N.J. 117, 123 (1952).
The Casino Control Act demonstrates a clear legislative intent that the Commission be financed exclusively from fees upon licensees and license applicants who require and benefit from the existence of the regulatory process. See N.J.S.A. 5:12-139b. However, we find that the Legislature did not intend that the work permit fee be used to raise revenue and did not set up guidelines and standards for the raising of revenue from this source. See Allen, 61 N.J.L. at 238. The Legislature contemplated that any annual shortfall would be raised through the casino license renewal fee. See N.J.S.A. 5:12-139a. Further, no attempt has been made to demonstrate a relationship between the burden placed upon casinos for the cost of work permits and the expenses directly and indirectly related to employee licensing and regulation. These shortcomings render the annual work permit fee of $50 per permittee improper.

II
Appellant urges that the amendments to N.J.A.C. 19:41-9.8, -9.9 and -9.9A are invalid because they place a "cap" or limitation on license fees paid by vendors and junket operators. It notes that the consequence is to shift to the casinos the excess costs of regulating such licensees and that it is contrary to the Legislature's intent that the licensees bear the total cost of their applications. It is appellant's position that N.J.S.A. 5:12-141 evidences that legislative intent as it provides:
The commission shall, by regulation, establish annual fees for the issuance and renewal of registrations and licenses other than casino licenses, which fees shall be payable by the licensee or the registrant. [(emphasis ours)]
Under the original regulation, adopted in 1980, each gaming-related casino service and junketeer was required to pay a *238 license fee of the greater of $2,500 or the hourly charge for staff investigations. Non-gaming related enterprises were charged the greater of $1,000 or a per hour charge, with a maximum fee of $3,000 unless a greater charge was approved by the Commissioner. See 12 N.J.R. 228-30, 732(a). The amendments under attack removed the open-ended feature of these regulations and imposed a flat fee system. N.J.A.C. 19:41-9.8, pertaining to gaming related industries, now reads in part as follows:
....
(b) In order to recover the cost of the thorough investigation and consideration of license applications by those sensitive industries, the initial license application and issuance fee for these industries shall be $3,000.
(c) In order to recover costs for monitoring compliance with the Act and the regulations and for assuring the continued fitness of these sensitive service industries, the application and issuance fee for the annual renewal of the license required for these industries shall be $3,000.
The license fee for non-gaming related industries is governed by N.J.A.C. 19:41-9.9 which provides:
....
(b) The initial application and issuance fee for a three year non-gaming related casino service industry license shall be $1,500.
(c) The application and issuance fee for the renewal of a three year non-gaming related casino service industry license shall be $1,500.
A $1,500 fee is also imposed for junket licenses and renewals by N.J.A.C. 19:41-9.9A(b) and (c).
Appellant asserts that under the original regulations the billable cost of licensing a single company averaged around $20,000 according to the Commission's own records and that this difference must be made up by the casinos under N.J.A.C. 19:41-9.4(f), which requires that the casinos be assessed the year-end shortfall of the Casino Control Fund. See N.J.S.A. 5:12-143.
Although appellant views N.J.S.A. 5:12-141 as a mandate that the licensee pay the total cost of processing its license, we take a narrower view of this provision. The language requires that whatever fees the Commission establishes must be paid for by the licensee, however, it does not state that the fees established *239 must cover all costs. The Commission has made a determination that it would be impractical to impose the entire regulatory cost upon license applicants and that the casinos are better able to share the uncollected costs. N.J.A.C. 19:41-9.1. The Commission has stated in N.J.A.C. 19:41-9.1(c):
To the extent fairly possible, each applicant or licensee should pay the investigatory or regulatory costs attributable to that applicant or licensee.
Thus, we are satisfied that it was with this yardstick that it concluded that it is not "fairly possible" to expect licensees to absorb the "full amount expended." We hold that appellant has failed to overcome the heavy presumption of validity to which the Commission's regulation is entitled. See Bergen Pines Hosp. v. Dept. of Human Serv., 96 N.J. 456, 477 (1984). We find no evidence that the regulation frustrates or is inconsistent with the legislative policy expressed in the statute. See In Re Barnert Memorial Hospital Rates, 92 N.J. 31, 39 (1983). Indeed, the Legislature has declared that one of the purposes of the Commission's regulatory powers is to "encourage and preserve competition." N.J.S.A. 5:12-1b(12).

III
Appellant's attack upon N.J.A.C. 19:41-9.4(f), the year-end shortfall assessment, is challenged by the Commission which notes that its provisions were unchanged by the July 1984 amendments. Even though the regulation has been in effect since 1981 we do not invoke the forty-five day appeal limit as the agency was acting in a quasi-legislative capacity in promulgating the regulation rather than in a quasi-judicial capacity. See Pressler, Current N.J. Court Rules, Comment R. 2:4-1(b) (1985). The Commission also argues that appellant has not exhausted its administrative remedy by petitioning the Commission to seek "the adoption, amendment or repeal of a regulation" as permitted by N.J.S.A. 5:12-69c. See R. 2:2-3(a)(2). The issue raised is purely legal and involves a matter of public interest. We will therefore not require that appellant exhaust its administrative remedy. See City of Atlantic City v. Laezza, 80 N.J. 255, 265-66 (1979).
*240 Appellant argues that N.J.A.C. 19:41-9.4(f) is beyond the power of the Commission as the Legislature intended that all operating expenses come from the Casino Control Fund. The fund was created under the provisions of N.J.S.A. 5:12-143 which provides:
a. There is hereby created and established in the Department of the Treasury a separate special account to be known as the "Casino Control Fund," into which shall be deposited all license fee revenues imposed by sections 139, 140, 141, and 142 of this act.
b. Moneys in the Casino Control Fund shall be apportioned, notwithstanding the provisions of P.L. 1976, c. 67 (C. 52:9H-5 et seq.), exclusively for the operating expenses of the commission and the division.
It is appellant's contention that the fees collected under N.J.S.A. 5:12-139 through -142 must be applied towards operating expenses and therefore the Commission's attempt via the regulation to saddle the casinos with any shortfall in revenue fees is unauthorized.
We reject appellant's argument. N.J.S.A. 5:12-143 provides no more than that the license fees be deposited in the Casino Control Fund and that the Fund's proceeds be used exclusively for operating expenses. It does not prohibit the Commission from recovering its expenses from other sources such as the year-end assessment in question.
Appellant concedes that the Casino Control Act, N.J.S.A. 5:12-1 et seq., contemplates that the Casino Control Commission and the Division of Gaming Enforcement are to be self-supporting. We have found no basis for disturbing the Commission's decision that the cost of licensing cannot be wholly recovered from licensees and that the casinos should share the burden of the excess. Therefore the assessment procedure set forth in N.J.A.C. 19:41-9.4(f) is not only consistent with the Act but necessary for its implementation. It will not be set aside.
The Casino Control Commission shall hold all necessary hearings pursuant to N.J.A.C. 19:42-8.1 to determine the reasonable amount to be charged for work permit fees. The amount set shall be based upon and not exceed the reasonable estimated aggregate cost of processing, monitoring and administering *241 the work permits. While we have found the regulation requiring a $50 work permit fee may not stand, we stop short of ordering that any amounts improperly raised be returned. We have no reason to believe at this time that the Commission will end its year on June 30th without a shortfall. If we were to order a refund on the work permit fee excess-charge it would increase the shortfall and the casinos would be assessed the additional shortfall under the provisions of N.J.A.C. 19:41-9.4(f). Although the assessment under the shortfall assessment regulation might, in the case of a particular casino, result in different charges depending on the length of time it was open during the year, the number of employees it had employed and the like, no individual casino has sought relief alleging a particular hardship because of the application of the work permit regulation. Therefore we hold that the appropriate relief to be granted to the appellant, Atlantic City Casino Hotel Association, is for us to direct that the Casino Control Commission establish proper work permit fees forthwith.
We affirm all of the challenged regulations except N.J.A.C. 19:41-9.5 and we remand for appropriate hearings and establishment of a proper fee with respect to that regulation. We do not retain jurisdiction.