824 A.2d 1073

WARREN COUNTY COMMUNITY COLLEGE, PLAINTIFF–APPEL-
LANT AND CROSS–RESPONDENT, v. WARREN COUNTY
BOARD OF CHOSEN FREEHOLDERS, DEFENDANT–RESPON-
DENT AND CROSS–APPELLANT.

IN THE MATTER OF THE WARREN COUNTY BOARD
OF CHOSEN FREEHOLDERS CHARGED WITH
CONTEMPT OF COURT.

Argued January 22, 2003—Decided June 19, 2003.

434

*Philip E. Stern,* argued the cause for appellant and cross-respondent (*Sills Cummis Radin Tischman Epstein & Gross,* attorneys; *Mr. Stern* and *Ruth M. Ruggero,* on the briefs).

*Joseph J. Bell, Jr.,* argued the cause for respondent and cross-appellant (*Joseph J. Bell & Associates,* attorneys; *Stephen H. Shaw* and *Brian C. Laskiewicz,* on the briefs).

*Barbara M. Kleva,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*David Sam-*

son, Attorney General, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

LaVECCHIA, J.

In this case we must decide whether a board of school estimate of a county college, created pursuant to an abridged version of the procedures delineated in *N.J.S.A.* 18A:64A–1 to –25, nonetheless has the authority under that statutory framework to compel a county's board of chosen freeholders to fund a capital project for the college. Because the college was established without an opportunity for public input as contemplated by the legislative scheme, and because the statutory power to mandate appropriations through the certification authority of the college's board of school estimate impacts the freeholders' authority to levy local taxes, we hold that the board of school estimate here does not—and constitutionally cannot—mandate county appropriations to the college. We further hold that despite the procedural irregularity that occurred in the college's formation, the college shall not lose its status, except in respect of the one constitutional problem that inhibits the full exercise of its statutory powers.

## I.

In 1981, the Warren County Board of Chosen Freeholders (County Freeholders) established the Warren County Community College Commission (Commission) pursuant to *N.J.S.A.* 18A:64A–30. The Board of Higher Education (BHE) granted a two-year license to the Commission to serve as a community college agency that would broker with neighboring county colleges to provide courses to Warren County residents. Over the next ten years, with approvals from the BHE, the Commission took a series of steps toward its goal of establishing a fully accredited county college. By 1986, the BHE approved the award of associate degrees by the Commission.

Subsequently, the Commission resolved to seek a change in its status from a community college agency to a county college and to

build a campus in Warren County. In 1991, the BHE authorized the implementation of a plan by the Commission to become a county college and instructed the Commission concerning the procedure to achieve that status.

The BHE did not view the Commission's attempt to change its status as a petition to create a new college under *N.J.S.A.* 18A:64A-2 to -6. Rather, the BHE considered the statutes to be applicable only when a county does not have an established community college agency. It reasoned that because the Commission could perform essentially the same functions as a county college, the Commission's conversion to a county college was not the creation of a new entity that required compliance with the statutes.[1] Accordingly, the BHE instructed the Commission to submit a petition for re-licensure asking that it be allowed to change its name to Warren County Community College (WCCC). The Commission did so and the BHE granted the petition on January 25, 1992. The County Freeholders never passed a resolution approving the creation of WCCC, but cooperated with the converted entity by providing funding during several fiscal years until the present capital facilities dispute arose.

Six years later, the WCCC Board of Trustees (Trustees) proposed the construction of a college community center. In a November 3, 1998, non-binding referendum, the voters of Warren County rejected that proposal. The Trustees subsequently adopted a resolution approving initiation of the construction program and referencing the Trustees' intent to seek funding under New Jersey's "Chapter 12 Program," which authorizes the State Treasurer to provide State matching funds for county college construction projects.[2]

---

[1] In a letter dated June 28, 1993, the Office of the Attorney General issued an opinion confirming that the BHE's reasoning was "entirely consistent with the statutory provisions governing county colleges."

[2] The common name of this program refers to its session law chapter number. *L.* 1971, *c.* 12 (codified at *N.J.S.A.* 18A:64A 22.1 to -22.8).

In accordance with the provisions governing county college budgets and financing, the Trustees forwarded the resolution to the college's Board of School Estimate. *N.J.S.A.* 18A:64A–17 and –19. The statutory scheme provides for a board of school estimate that, in the case of a college formed by a single county (as in Warren County), must consist of the chairman of the county freeholders, two other freeholders selected by that board, and two members of the college's board of trustees selected by the membership of that board. *N.J.S.A.* 18A:64A–15. On February 10, 1999, WCCC's Board of School Estimate certified that the amount necessary to complete the capital project was $4,140,720 (an amount that anticipated fifty percent matching funds from the State) and forwarded its certification to the County Freeholders. That certification occurred as a result of a three-to-two vote by the Board of School Estimate, with the majority consisting of the two non-elected trustee members and one freeholder. Pursuant to *N.J.S.A.* 18A:64A–19, the certification by a board of school estimate requires the freeholders to raise the funds so certified by one of the methods enumerated, including the issuance of bonds or notes to finance the project.

The freeholders did not provide the funding in accordance with the certification. Instead, by a vote of two freeholders to one, they rejected a resolution that would have authorized the retention of counsel to draft a bond ordinance to generate the necessary funds. WCCC then filed an action in lieu of prerogative writs and an order to show cause why the County Freeholders should not be directed to appropriate the funds necessary. Although the trial court ordered the freeholders to proceed with the issuance of bonds, no action was taken.

The Trustees continued their efforts in support of the college community center, adopting another resolution calling for issuance of bonds in a certain amount for the project. That resolution also was certified by the Board of School Estimate, but the freeholders again took no action. The college again applied to the Law Division, and on October 14, 1999, the trial court granted summary

judgment to WCCC and ordered the County Freeholders to appropriate the certified funds within thirty days. The freeholders did not appeal the order, but the deadline was extended to January 31, 2000. The freeholder chairman sent a letter to the State Treasurer seeking State matching funds for the project, which State funds were granted on the condition that the county issue bonds no later than August 1, 2001.

By March 2001, the Trustees became concerned that the requisite bonding would not issue before the August 1 deadline. The Trustees filed a motion in aid of litigants' rights to compel compliance with the court order. In its opposition to the motion, the County Freeholders contended that WCCC did not achieve college status properly under the statutes, and thus the Board of School Estimate lacked the power to compel the appropriation of funds or the issuance of bonds. The court rejected that argument, and ordered that bonding proceed within ninety days. After an unsuccessful motion for reconsideration, the County Freeholders appealed.[3]

The Appellate Division reversed the Law Division orders directing the freeholders to issue bonds. *Warren County Cmty. Coll. v. Warren County Bd. of Chosen Freeholders*, 350 *N.J.Super.* 489, 516, 796 *A.*2d 257 (2002). The court concluded that *N.J.S.A.* 18A:64A–18, which requires a county governing body to appropriate funds certified by a board of school estimate, is unconstitutional as applied to Warren County. *Id.* at 504–05, 796 *A.*2d 257. The panel reasoned that the makeup of the Board of School Estimate in Warren County, consisting of all three Warren County Freeholders and two non-elected members (the College Trustee members), resulted in a situation where the Board of School Estimate could certify funds for appropriation even though only one of the

---

[3] While that appeal was pending, the ninety-day period passed, and the Trustees brought an action seeking a determination that the freeholders were acting in contempt of the trial court's orders. On July 2, 2001, the trial court found two freeholders in contempt and ordered that they pay WCCC's attorneys' fees as a sanction. This Court stayed the contempt order.

three elected freeholders supported the action. *Ibid.* The panel concluded that the statute was unconstitutional as applied to a three-member freeholder board in that a non-majority vote by the freeholder members on the board of school estimate could bind the hands of an elected body. *Ibid.*

In addition, the Appellate Division observed that the Commission had failed to convert properly into a county college because it had not followed the procedures outlined in the statute. *Id.* at 508, 796 A.2d 257. Specifically, the statutory process provides for an opportunity for voter input on the decision to create a county college if a minimum signature requirement is met. The voter participation opportunity, however, is triggered by the publication requirement of the statute. If the resolution is not published properly, the opportunity for voter input is negated. The court noted the importance of the review and approval provisions in the statute, and concluded that the trial court exceeded its authority when it mandated that the county raise the funds. *Id.* at 508–09, 796 A.2d 257. Therefore, the court invalidated the order compelling the County Freeholders to honor the certification of the Board of School Estimate in respect of bonding for the college community center project. *Id.* at 508, 796 A.2d 257. The court also invalidated the contempt orders against the freeholders. *Id.* at 514, 796 A.2d 257.

We granted the parties' petition and cross-petition for certification, limited to a determination as to the constitutionality of *N.J.S.A.* 18A:64A–15 and –19 as applied to Warren County and as to the legal status of Warren County Community College. 172 *N.J.* 359, 359–60, 798 A.2d 1272 (2002).

## II.

This is a dispute between the Trustees, acting in conjunction with WCCC's Board of School Estimate, and the County Freeholders in respect of the formers' authority to compel the County Freeholders to appropriate funds for WCCC. Central to its resolution is an understanding of the procedure that the Legislature has

established for the creation of a county college, and the powers and rights that are conferred as a result of following that procedure. Accordingly, we turn first to the legislative scheme.

If a county's board of chosen freeholders decides to create a county college, the freeholders first must petition the Commission on Higher Education.[4] *N.J.S.A.* 18A:64A-2. The petition must include a report describing the proposed curriculum, the county's educational needs, and an estimate of the costs. *Ibid.* The Commission must then determine whether there is a need for a county college, and whether the county in question is financially able to support such an institution. *Ibid.* If the Commission approves the request, the freeholders must then pass a resolution establishing the county college. *N.J.S.A.* 18A:64A-3.

Prior to passing the resolution, however, the freeholders must publish the resolution in a newspaper with circulation in the county. *Ibid.* That publication must also include notice of the time and place of a public hearing to be held on the resolution. *Ibid.* If the resolution passes, the board of chosen freeholders must again publish the resolution in full, and must file the resolution with its clerk and the clerk of each municipality in the county. *Ibid.* Citizens of the county have forty-five days to produce a petition requesting a referendum on the creation of the county college. *Ibid.* The petition must contain signatures from the lesser of five per cent or 100,000 of the registered voters in the county, or, alternatively, must be authorized by the governing bodies of municipalities in the county that make up fifteen percent of the county's population. *Ibid.* If such a petition is filed, a referendum on the establishment of the college must be submitted to the voters of the county in the next general election, and must pass by a majority vote. *N.J.S.A.* 18A:64A-5 to -6. Absent a petition, the

---

[4] The Higher Education Restructuring Act abolished the Board of Higher Education and replaced it with the Commission on Higher Education. *L.* 1994, *c.* 48. The Act transferred all the powers of the Board of Higher Education to the Commission on Higher Education, including duties in respect of the creation of county colleges. *L.* 1994, *c.* 38, § 32.

resolution as passed by the freeholders becomes effective once the forty-five day window passes. *N.J.S.A.* 18A:64A–3.

Thusly created, a county college is governed by a board of trustees that has the authority to, among other things: (1) determine the curriculum; (2) appoint a president and administrative and teaching staff; (3) grant diplomas; (4) fix tuition rates; (5) exercise the right of eminent domain; and (6) accept property and grants. *N.J.S.A.* 18A:64A–12. Notably, the board of trustees does not have the authority to determine the yearly budget for the college. See *N.J.S.A.* 18A:64A–17. Each college, established in accordance with the requirements above, must have a board of school estimate comprised of the chairman of the freeholders, two other freeholders selected by their board, and two members of the board of trustees selected by that board. *N.J.S.A.* 18A:64A–15. Although the board of trustees must submit an itemized statement of estimated costs, it is the board of school estimate that, at a public hearing in which the public is invited to participate, determines the funds necessary to operate the college in the forthcoming fiscal year. *N.J.S.A.* 18A:64A–17.

Following that public hearing, the board of school estimate must certify the amount in writing to the freeholders. *Ibid.* On receipt of the certificate, the board of chosen freeholders is required to appropriate the certified amount. *N.J.S.A.* 18A:64A–18. The freeholders have no discretion to alter the amount fixed by the board of school estimate: they must appropriate the monies, which are then assessed, levied, and collected in the same manner as other county appropriations. *Ibid.* Alternatively, funds may be raised by the county's issuance of bonds or other forms of financing. *N.J.S.A.* 18A:64A–19.

As noted earlier, if a county has not established a college, the freeholders may decide to establish a "community college agency," as was done in Warren County initially. *N.J.S.A.* 18A:64A–30. To establish such an agency, the freeholders need only obtain the consent of the Commission on Higher Education—no referendum or other form of public participation is necessary. See *N.J.S.A.*

18A:64A–30 to –32. Moreover, to establish an agency, the free-holders need not submit a report or make a determination of any kind in respect of the need for the institution. *Ibid.*

The agency is governed by a "community college commission" (commission), which must consist of the county superintendent of schools and nine citizens. *N.J.S.A.* 18A:64A–31 to –32. Elected officials are prohibited from serving on the commission. *N.J.S.A.* 18A:64A–32. The commission has essentially the same operational authority as a board of trustees of a county college, except that the commission does not have the right of eminent domain. *N.J.S.A.* 18A:64A–35. Also, in the context of the agency's finances, unlike the board of trustees of an established county college, the commission is charged with providing a "recommendation" in respect of necessary operating funds. *N.J.S.A.* 18A:64A–17; *N.J.S.A.* 18A:64A–36. Although the legislative framework provides for review of the recommendation by a board of school estimate, the Appellate Division concluded that the board of school estimate's action in respect of a county college agency is not binding on county freeholders. *Warren County, supra,* 350 *N.J.Super.* at 508, 796 *A.*2d 257. According to the Appellate Division, there are two key distinctions between an established county college and a county college agency: (1) only the Board of School Estimate of a county college can fix the amount of operating funds and then compel the county freeholders to provide that funding; and (2) a voter participation opportunity is required to establish a county college. The distinctions, however, are of signal importance in meeting constitutional requirements. We think the Appellate Division's reading is sensible and preserves the statute from constitutional doubt. See *Silverman v. Berkson,* 141 *N.J.* 412, 417, 661 *A.*2d 1266, *cert. denied,* 516 *U.S.* 975, 116 *S.Ct.* 476, 133 *L.Ed.*2d 405 (1995).

■ The New Jersey Constitution confers on the Legislature the power to impose taxes and otherwise raise revenue. *N.J. Const.* art. IV, § 6, ¶ 1. Although the Legislature's broad power to levy taxes generally may not be delegated to ministerial officers or

to another department of State government, the power to levy taxes at the local level may be delegated to political subdivisions to defray local costs and expenses, "on the principle that for local purposes the local authorities are the representatives of the people." *Township of Bernards v. Allen*, 61 *N.J.L.* 228, 236, 39 *A.* 716 (E. & A. 1898). Thus, implicit in the delegation of taxing power to counties and municipalities is the concept of popular representation rooted in the principle that the right of taxation rests ultimately with the people. *Ibid.*

Under the legislative plan in *N.J.S.A.* 18A:64A–1 to –25, a board of school estimate's power to mandate, through its certification authority, the appropriation of funds to support a county college affects the authority of the county board of freeholders to levy local taxes. The amount that a board of school estimate fixes must be (1) diverted from revenues that otherwise might be expended on other county needs; (2) raised from the levying of additional taxes; or (3) in the case of improvements, raised by the issuance of bonds or notes. *N.J.S.A.* 18A:64A–18 to –19. Thus, the board of school estimate's certification ties the hands of the freeholders in respect of the allocation of funds and, by doing so, limits the authority of an elected body to allocate revenue. Put another way, effectively, the board of school estimate has been empowered to force the allocation or appropriation of revenue. To withstand constitutional scrutiny, that legislative authorization of power to a board of school estimate comprised of elected and non-elected officials must reflect the will of the people.

The question when the requirement of popular representation has been satisfied has been addressed before, as the Appellate Division recognized. This Court has held that the constitutional requirement is met when the public is afforded an opportunity to decide whether to subject itself to a statutory scheme in which appropriations determinations will be made by an entity consisting of both elected and non-elected officials. *See, e.g., Gualano v. Bd. of Sch. Estimate of Elizabeth Sch. Dist.*, 39 *N.J.* 300, 305, 188 *A.2d* 569 (1963) (recognizing validity of similar scheme requiring that

municipal governing body make appropriations for Type I local school district when budgetary needs are certified by board of school estimate); *Bd. of Educ. of Garfield v. City of Garfield,* 147 *N.J.Super.* 146, 149, 370 *A.*2d 890 (App.Div.1977) (finding no "constitutional infirmity" when citizens voted for procedure in which local governing body is required to appropriate in accordance with board of school estimate certification for Type I school district).

■ The legislative plan for the creation of a county college provides a mechanism that allows an opportunity for public input on whether to create a county college, within a structure that includes a board of school estimate empowered to compel the expenditure of funds certified as necessary for the college's operational and capital needs. *N.J.S.A.* 18A:64A–5 to –6. Only after complying with the statutory procedures for formation, including a public hearing as well as the opportunity for public input contemplated by the petition process, does the board of school estimate obtain the power to mandate appropriations by the county freeholders. Compliance with that aspect of the statutory requirements eliminates any constitutional infirmity otherwise present in allowing an entity of mixed elected and non-elected members to compel the expenditure of public tax revenues.

## III.

■ The citizens of Warren County never determined to subject themselves to the appropriations decisions of the Board of School Estimate. WCCC was created not through the statutory means described above, but through resolution of the BHE. Absent the statutorily contemplated opportunity for input by the populace, WCCC's Board of School Estimate is without authority to mandate appropriations by the county freeholders. Simply put, the creation of the county college by sanction of the BHE eliminated the opportunity for public participation necessary to vest in the Board of School Estimate the power to mandate appropriations.

The legislation does not envision that result, and the constitutional principles governing the taxing power prohibit it.

That said, the county college created in Warren County under the direction of the BHE is in no way infirm in respect of other powers. The WCCC was created in accordance with the instructions of the state agency then charged with the authority and responsibility for implementation of the statutes governing higher education, and the process was endorsed by an opinion of the Attorney General. Our decision, thus, is limited to the effect that must be given to certifications issued by the Board of School Estimate. Absent the opportunity for public initiative and referendum on the creation of the county college, the certifications issued by the Board of School Estimate may not bind the County Freeholders. We see no need to reach the other conclusions of the Appellate Division, except to note our disagreement with that part of the court's opinion stating that the statutory scheme is unconstitutional as applied to Warren County.

We do not agree that the statute, when followed, is infirm, even for a county having only three freeholders, as in the case of Warren County. Conceptually, there is no meaningful distinction between the statutory scheme at issue here and *Garfield, supra,* which upheld the authority of a board of school estimate containing both elected and non-elected members to compel expenditures by an elected local governing body once the populace agreed to the school governance structure. 147 *N.J.Super.* at 149, 370 *A.2d* 890. It matters not, in our view, whether the appointed board in this instance overrules a three-member governing body, or a larger governing body; what matters is whether the Legislature gave the appointed body specific authority to do so without any form of voter input. Accordingly, here, had there been an opportunity for public input as the legislative scheme envisions, there would be no constitutional infirmity with the statute's application in Warren County's setting.

## IV.

As modified herein, the judgment of the Appellate Division is affirmed.

VERNIERO, J., concurring.

The issue in this case is whether the Legislature properly has delegated its taxing authority to the board of school estimate (board), a statutorily created entity. Warren County's board consists of three freeholders and two persons selected by the board of trustees of Warren County College. Freeholders, of course, are popularly elected to their positions, whereas college trustee members are not. The board's configuration makes possible that which occurred in this case, namely, that the two non-elected trustee members would join an elected freeholder to mandate expenditures contrary to the will of a majority of the elected freeholders.

The Court concludes that the board's action in mandating those expenditures is impermissible. It reaches that result "[b]ecause the college was established without an opportunity for public input as contemplated by the legislative scheme, and because the statutory power to mandate appropriations through the certification authority of the college's board of school estimate impacts the freeholders' authority to levy local taxes[.]" *Ante* at 435, 824 *A*.2d 1074. I agree entirely with that rationale. Irrespective of any other possible infirmity, Warren County's failure to gain public input when establishing its county college rendered the board without authority to act in the manner sought here.

Although it need go no further to dispose of this appeal, the Court proceeds to conclude that had such public input been obtained, then the board's action would have passed constitutional muster. *Ante* at 445, 824 *A*.2d 1074. And there is where I part company from my colleagues. I would not express a view concerning the board's authority in the event that Warren County's voters had been given the opportunity merely to file a petition concerning the college's existence. I would reserve that question

for another day and would decide it only if necessary to complete an adjudication when the issue squarely is presented. See *Donadio v. Cunningham*, 58 *N.J.* 309, 325–26, 277 *A.*2d 375 (1971) (emphasizing that "a court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation").

Moreover, even if voters had approved the college as a result of a ballot referendum, I would not express a view concerning the impact of that approval on the delegation issue that is at the heart of this case. As was conceded at oral argument, under an extreme application of its purported authority, a board can force a county to finance virtually unlimited expenditures. Without further analysis that would include a review of the precise ballot question in a given case, I would not conclude that voters have delegated authority to the board, without approval from a majority of the elected freeholders, to finance that degree of spending simply by approving a college's creation.

Thus, I would affirm the Appellate Division's judgment solely on the basis that voters were denied the opportunity to participate in the formation of the college in the first instance. We need not— and, without further analysis, should not—decide whether such participation would have cured the board's constitutional defect.

*For affirming*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI, and ALBIN—7.

*Opposed*—None.